### LORD and others *against* MOORE and others.

Where a testator having a wife and four children, after making specific devises to each of them, directed, that the residue of his estate should be put into the hands of trustees, with authority to receive the income thereof, and to "divide the same equally between my said wife and said children, and their heirs;" it was held, that these words gave to the wife, a share of such income, equal only to that of one of the children; there being nothing else in the will to shew a different intention.

THIS was a case agreed upon by the parties, and submitted to the superior court, under the statute of 1848.

*George Moore*, of *Lyme*, in this state, having made his will, bearing date, *February* 25th, 1846, died, on the 18th of *November*, 1848, leaving his wife, *Emily Matilda Moore*, and four children, one of whom was then of adult age, and the other three, minors. He left also real and personal estate, inventoried at 38,592 dollars; the debts against his estate amounting to about 12,000 dollars.

The testator, by his will, gave to his wife, the use and

improvement of all his real estate in *Lyme*, (except a certain

farm given to his daughter,) during the time she might remain unmarried after his decease. He also gave her all his furniture of every kind, and "all the stock, hay, grain, provisions and furniture," which he might leave at his decease. After making specific devises to each of his children, he proceeded, in the next section of his will, as follows : " I give, bequeath and devise all the rest and residue of my estate of every kind and description, which I may own at my decease, and which may remain after paying my debts and the expenses of settling my estate, to my wife, *Emily Matilda*, and my friends, *Charles C. Griswold* and *John Noyes*, to be by them holden *in trust* for my said wife and all the children which I may leave, until all the said children shall become of age, and the death or marriage of my wife. And I do authorize and empower them to manage and take care of the same, at their discretion and according to their best judgment—to receive all the interest and income thereof, and divide the same equally between my said wife and said children and their heirs. And in case the share or shares of any one or more of said children shall, in the opinion of the trustees, be inadequate for the proper support and education of such child or children while under age, the trustees are hereby empowered to apply so much of the other shares of said income as they may deem necessary for the proper education and maintenance of such minor child or children. And after all my said children shall become of age, and after the decease or marriage of my said wife, I order and direct, that the property herein given in trust, be so divided among said children and their heirs, as that, with the real estate herein given to my two eldest children, at the prices herein specified, they shall be made equal ; and that in case of the marriage of my wife, she shall be entitled to receive, upon the division of my estate, a share equal to one of our children."

Two questions arose in this case : 1. Whether *Emily Matilda Moore,* the widow of the testator, is entitled to take, as her share, one-half of the income of the trust property, or only a share equal to that of one of the children ? 2. Whether she was entitled to the farming utensils, carriage, wagons and harness ; it being admitted by the parties, that

*New-London,*
July, 1849.
———————
Lord
*v.*
Moore.

the testator, during his life-time, was in the habit of calling these articles, his "*barn furniture.*"

The case was reserved for the advice of this court; but before it was submitted for decision, the parties, by an arrangement between themselves, withdrew the second question.

*McCurdy* and *H. Willey,* for the plaintiffs, [the children,] contended, 1. That the language of the will, in its common acceptation—according to its ordinary meaning—shows, that the income of the trust property is to be divided *per capita.* It is to be "*equally*" divided between these devisees; and to give one as much as all the others, would be an *unequal* division.

2. That this construction is in accordance with the decisions. *Weld* v. *Bradbury* & al., 2 *Vern.* 705. *Blackler* v. *Webb* & al., 2 *P. Wms.* 383. *Pemberton* v. *Parke* & al., 5 *Binn.* 601.

3. That this is manifest from the *whole will.* To each of the five individuals named in his will as objects of his bounty—his wife and four children, by name—the testator makes separate provision—such as he supposed was suited to their respective circumstances; and then he puts the residue of his estate into the hands of trustees, the income of which is to be divided equally between the same individuals. Did he intend that one of them should take four-eighths, and the others but one-eighth, each, of such income?

*Foster* and *Chadwick,* for the defendants, in behalf of Mrs. *Moore,* contended, That she was entitled to one-half of the income of the trust property, during the continuance of the trust. They insisted,

1. That this appears from the fair construction of the words creating the trust. The objects of the testator's bounty in that clause, are two; his wife being one, and the children, unitedly, the other. "To divide the same equally between my said wife and said children," requires a division of the property into *moieties,* and of the recipients into *classes.* There are, indeed, some authorities sanctioning a contrary construction. See 2 *Pow. Dev.* 330, 1. *Jarman on Wills,* 111, 2. and the authorities there cited. But these

authorities are not based on principle, and seem to do vio- *New-London,* lence to the intent of the testator, in each case. In the leading case of *Blackler* v. *Webb*, it is stated, that the Lord Chancellor at first seemed inclinable to the construction *per stirpes*, but finally decided the other way. *Powell* says, in the page above referred to, " it may be conjectured, that the testator has a distribution according to the statute [ *per stirpes* ] in his view ;" and *Jarman* says, " this mode of construction [ *per capita* ] will yield to a very faint glimpse of a different intention in the context." It would seem, that these writers, and the courts also, were not satisfied, that the intent of the testator was carried into effect, by this construction ; and they were therefore prepared to adopt the contrary construction, whenever they had the slightest excuse for so doing. See *Jackson* d. *Hunt* & al. v. *Luquere*, 5 *Cowen*, 221. *Bool* & ux. v. *Mix*, 19 *Wend*. 119.

*New-London,*<br>July, 1849.<br><br>Lord<br>*v.*<br>Moore.

2. That if the construction of this clause in the will, taken by itself, be so that the widow could take but one-fifth of the income of the trust property, still taking the whole will together, it is manifest, that the testator intended that she should take one-half. The single fact, that this widow is left with a family of four young children to nurture and provide for, goes very strongly to show, that her husband did not intend to turn her off with only one fifth of the income from the bulk of his property, giving four-fifths to his children, some of whom were at an age to require but a small portion of it ; (*a*) and none so situated as to require as much as the mother. There is here something more than what *Jarman* calls " a very faint glimpse" of an intention that the wife should have more than a child—in other words, that the wife should have one-half, and the children, as a class, the other half.

Again, on the division of the property, on the marriage of the widow, should that happen, she is to receive a share of the *capital*, equal to that of one of the children. It cannot be believed, that the testator meant to hold out *inducements* to his wife to marry again. But if she is to take only one fifth of the income of the trust property, she would be

(*a*) The case shews, that the ages of the three minor children respectively, were eighteen, sixteen and seven.

better off, in a pecuniary point of view, to get married, than to remain single ; for by getting married, she gets one-fifth of the capital absolutely. There can be no clearer evidence of an intent to give her one-half the income, while she remains single, than thus limiting her to one-fifth of the capital, on a division, after her marriage. The case of *Brett* v. *Horton*, decided by Lord *Langdale*, M. R. in 1841, is directly in point. It is reported, 5 *Jurist*, 696.

Hinman, J. The only question now remaining for our decision, in this case, is, whether the will of Mr. *Moore* gives to his widow one-half of the income of certain trust property ; or, whether she takes only a share in it, equal to a share of one of her children. [The judge giving the opinion of the court here stated the clause of the will under which the question was raised.]

We are of opinion, that these words give to the wife only an equal share with one of the children. The words, "wife and children" are used merely as descriptive of the persons who are to take shares in this income ; and we see nothing in the clause itself, nor in the connexion in which it stands, to show, that any other than the natural import of the words, "divide the same equally between my said wife and said children," is to be given.

It seems to be admitted, that the authorities sanction this construction ; particularly the leading case of *Blackler* v. *Webb*, 2 *P. Wms.* 385. But it is said, "that this will yield to a faint glimpse of a different intention." This may be so ; but we do not find, in this will, any such different intention. The mere fact, that there were four children, and therefore, that the wife's share is only one-fifth of the property, is wholly insufficient for this purpose. Any weight given to this fact, would be rather looking away from the testator's will to the situation of his family, and endeavouring to construe the words used, in reference to what might be supposed to have been a proper disposition of his estate. We do not feel authorized to do this ; and there does not seem to be any such ambiguity as to require it. The words of the will appear to be sensible, in themselves ; and they are not insensible, with reference to his family, or any extrinsic circumstance. Where this is so, we can only say what is the meaning of the words used.

The question raised, in regard to  whether certain articles *New-London, July, 1849.* belong to the widow, under the  clause in the will  giving her " all the furniture of  every kind," having been settled by the agreement of the parties, requires no further notice.

*Lord v. Moore.*

We advise the superior court, that Mrs. *Moore* takes, under the will of her husband, such share of the income of the trust property as is equal to a share of one of the testator's children.

In this opinion the other judges concurred.

Judgment for plaintiffs.