SIMEON PEASE, ADMINISTRATOR C. T. A., *vs.* GEORGE W. CORNELL ET ALS.

Third Judicial District, Bridgeport, April Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

Words of a will are to receive their usual and primary meaning, unless it appears from the context and attendant circumstances that the testator intended otherwise.

A testator's intent, if sufficiently expressed and not contrary to some positive rule of law, must prevail.

A testator who died in 1883 leaving four children, made bequests to a daughter for life, with remainder, in one clause, to "her issue and their descendants" *per stirpes* forever, and in another, to "her descendants forever." *Held* that inasmuch as there was nothing in the context or surrounding circumstances to indicate that the testator used the words "issue" and "descendants" in any restricted sense or with other than their primary and usual broad meaning, the gift over was void because in violation of the then-existing statute against perpetuities.

In common speech the words "heirs" and "children" are often used as synonymous.

Trust funds set apart for the life use of *G*, one of the testator's sons, were bequeathed, upon *G's* decease, "to his heirs forever in three equal portions share and share alike." *G* had three children when the will was executed, and a fourth, unknown to the testator, was born just before he died. *Held* that the word "heirs" was used in the

sense of "children," and therefore these bequests were not in violation of the statute against perpetuities, but vested in the four children of *G* who survived the testator.

Words should be construed so as to uphold rather than destroy a bequest, if they are reasonably susceptible to such an interpretation.

Presumptively words have the same meaning when repeated in a will, unless the context indicates the contrary, or unless the words are applied to a different subject.

Argued April 19th—decided June 15th, 1911.

SUIT to determine the construction and validity of certain provisions in the will of Charles Cornell, late of the town of Fairfield, deceased, brought to and reserved by the Superior Court in Fairfield County, *Shumway, J.,* upon an agreed finding of facts, for the advice of this court.

Charles Cornell died November 18th, 1883, domiciled in Fairfield, possessed of both real and personal property, and leaving a will executed May 7th, 1881, duly probated December 28th, 1883. Said Walter Cornell and Isaac B. Wilson were named as executors in said will, and resigned, and plaintiff was appointed administrator with the will annexed on September 21st, 1908, and duly qualified. The testator was survived by a widow, two sons, Walter Cornell and the defendant George W. Cornell, and two daughters, the defendants Fannie M. Seeley and Grace W. Cornell. The widow died in November, 1910. Said Walter Cornell died July 29th, 1909, and the defendant Frances A. Cornell has been appointed and qualified as administratrix of his estate. Said Fannie M. Seeley is married, having no children. Said George W. Cornell has four children, all of whom were living when the testator died. One of said children, Alice B. Cornell, was born five days before the death of the testator, but said Charles Cornell never knew of her birth.

The testator gave to his wife the use during her life of all his estate, and thereafter provided as follows:—

"Art. 5. Upon the death of my said wife, I give to my son, George W. Cornell, ten dollars, which sum with that already advanced by me to him will make twelve hundred dollars.

"Art. 6. I give to my son, Walter Cornell, twelve hundred dollars to be his forever.

"Art. 7. I give to my daughter, Gracie W. Cornell, twelve hundred dollars to be hers forever.

"Art. 8. I give to said Walter Cornell and Isaac B. Wilson eight hundred dollars to hold in trust for the following purposes, to wit: 1. To pay the income thereof to my daughter, Fannie M. Seeley, during her natural life. 2. Upon her death to divide and pay said sum of eight hundred dollars among and to her lawful issue and their descendants to be theirs in equal portions per stirpes forever. 3. But if she dies leaving no descendants living at that time, then said sum shall be divided among, and paid to, said Walter Cornell, Gracie W. Cornell and said Walter Cornell and Isaac B. Wilson, as trustees, for the use of said George W. Cornell, during his life, and upon his decease to his heirs forever in three equal portions share and share alike forever (said sum of eight hundred dollars with that already advanced by me to her, Fannie, will make twelve hundred dollars).

"Art. 9. All the rest and residue of my estate then remaining I give and devise to said Walter Cornell and Isaac B. Wilson, as trustees, for the life use of said George W. Cornell, and upon his decease to his heirs forever, to said Walter Cornell and Isaac B. Wilson, as trustees, for the life use of said Fannie M. Seeley, and upon her decease to her descendants forever, if any, if not, to go as provided in like case in article eight (third section) above, and to said Walter Cornell and to said Gracie W. Cornell in four equal shares, or if any of them be dead leaving no living issue and descend-

ants, then to the survivors of them share and share alike."

The questions upon which the advice of this court is asked are:—

"(a). Whether that portion of Article 8 of the will which provides that the trust fund therein created for the benefit of Fannie M. Seeley shall, upon her death, be divided among her lawful issue and their descendants, is void, as being in contravention of the rule against perpetuities.

"(b). Whether that portion of Article 8 of the will which provides that the trust fund therein created for the benefit of George W. Cornell, shall, upon his death, vest in his heirs, is void, as being in contravention of the rule against perpetuities.

"(c). Whether that portion of Article 9 of the will which provides that the trust fund therein created for the benefit of George W. Cornell, shall, upon his death, go to his heirs, is void, as being in contravention of the rule against perpetuities.

"(d). Whether that portion of Article 9 of the will which provides that the trust fund created therein for the benefit of Fannie M. Seeley, shall, upon her death, go to her descendants, is void, as being in contravention of the rule against perpetuities."

*John W. Banks,* for the plaintiff.

*Clifford B. Wilson,* for George W. Cornell *et al.*

*John C. Chamberlain,* for Rachel R. Scott.

*Spotswood D. Bowers,* for Charles A. Cornell *et al.*

WHEELER, J. The primary and usual meaning of a term used in a will is to govern, unless it appears from

the context or the surrounding circumstances at the time the testator made the will he intended otherwise.

What the testator intended, if "sufficiently expressed" and "not contrary to some positive rule of law," must prevail.

The remainder over, in the bequests for the benefit of his daughter Fannie in Article 8, section 2, "to her lawful issue and their descendants," and in Article 9 "to her descendants forever", violates the statute against perpetuities in existence at the decease of the testator, since "issue" and "descendants" in their primary and usual sense "comprehend more than immediate issue." Since the descendants can only be ascertained upon the death of the daughter Fannie, these might include children of persons not in being at the testator's death.

In the construction of a devise to the heirs of a living person we said: "It has been determined in this State by a long and uniform line of decisions, . . . that a devise to the heirs of a living person (unless it appears that his children are intended) violates the statute against perpetuities which existed at the date of the decease of the testator, because, until the death of such person, his heirs cannot be ascertained and it is possible that they may be the issue of children yet unborn at the testator's death." *Grant* v. *Stimpson,* 79 Conn. 617, 620, 66 Atl. 167.

The same rule applies in the construction of the bequests to the daughter Fannie. Neither the context nor the surrounding circumstances furnish any ground for thinking that the testator used these terms in other than their primary significance.

At the date of execution of the will and at his death the testator had a wife, two sons, and two daughters. None of his children had children except George W. Cornell, and at the date of execution of the will there were three of these.

The testator made a like bequest to two of his children, and to George W. $10, which sum, he says, "with that already advanced by me to him will make twelve hundred dollars." To his daughter Fannie he gave the income of $800 during her life, he having already advanced to her a sum sufficient, with this bequest, to equal $1,200. The remainder over of the bequest to the daughter Fannie in Article 8, if she die leaving no descendants then living, he gives to trustees for the use of his son George W. " during his life, and upon his decease to his heirs forever in three equal portions share and share alike forever."

" Heirs " and " children " have different meanings in the law, "yet in common speech they are often used as synonymous." *Lockwood's Appeal*, 55 Conn. 157, 165, 10 Atl. 519. The testator may have used the word "heirs" with its ordinary meaning. If we may construe the word "heirs" to mean the children of George W. Cornell living at the testator's death, this bequest will be valid, and the law prefers that to a construction which will convert this bequest into an illegal perpetuity. *Nicoll* v. *Irby*, 83 Conn. 530, 77 Atl. 957; *Farnam* v. *Farnam*, 83 Conn. 369, 381, 77 Atl. 70; *Wolfe* v. *Hatheway*, 81 Conn. 181, 184, 70 Atl. 645.

Illustrations of the manner in which we have made use of the context and circumstances surrounding the testator in declaring his intent, are not infrequent in our reports. In *Nicoll* v. *Irby,* 83 Conn. 530, 77 Atl. 957, we construed a devise, after a life use to a brother, of a remainder "to my own heirs," to mean the next of kin exclusive of the brother who was the next of kin and only heir at law at the testator's death; because from the context and surrounding circumstances it appeared that the testator intended to exclude the stepchildren of his brother from a share in his estate, and if by "my heirs" were designated the heirs of the

testator at the death of his brother, it would be possible
for the brother to adopt the stepchildren after the
testator's death and thus make them the heirs of the
testator contrary to his intent. In *Wolfe* v. *Hatheway*,
81 Conn. 181, 70 Atl. 645, the testatrix gave the income
of one half of her residuary estate to two sons, "and at
the death of either or both, to their heirs at law respec-
tively," and directed that at the death of their wives
and all the children of the said two sons, the said prop-
erty should go to the grandchildren. We held that by
the term "heirs at law" the testatrix intended the class
of persons defined by her immediately afterward as
"wives and children," and that "to avoid the creation
of an illegal perpetuity it ought to be so interpreted."
In *Connecticut Trust & Safe Deposit Co.* v. *Hollister*,
74 Conn. 228, 231, 50 Atl. 750, we held from the con-
text that the term "legal heirs" in a will was used as
the equivalent of the words subsequently employed in
the same sentence: "those who shall legally represent
them," and of "their legal heirs or representatives."

What, then, did the testator intend by the term
"heirs" in Article 8? Did he intend his three children
other than George W., or did he intend his three grand-
children then living, or did he intend the heirs of his
son George W. who might be living at his death? "In
three equal portions" may apply to either the three
children or the three grandchildren. There can be no
doubt of the testator's intention. He desired to give
to his son George and his children a greater proportion
of his property than to his other children and their
issue. George was not provident, and so he placed his
portion in trust, giving him its use. What more natural
than that he should leave the remainder to the children
of George? These were his only grandchildren. He
was on terms of affection with their father. The strong
relation of affection between a grandparent and his

grandchildren is a fact of nature of universal acceptance, and this provision should be construed keeping in view this fact. When this testator refers in different parts of this will to his own children he invariably names them. Had the testator intended that the remainder referred to in Article 8 should go to his three children, he would have pursued the method used by him in the other parts of his will. If George W. died leaving children, these would be his heirs. It is quite unlikely that the testator contemplated that the three children of George might die before his own children, and that in his use of the term "heirs" he intentionally used a term which might include the sisters and brother of George W., or the three grandchildren. The testator's purpose was to provide for his own children, and then for their children.

A fourth child was born to George W. Cornell five days before the testator's decease, but as the testator never knew of the birth of this child, no duty rested upon him to make his will correspond with the fact and to change the language from three to four portions. His intention existent at the execution of his will to give these remainders to his grandchildren could not be varied by a fact subsequently occurring of which he had no notice. This language, read in the light of the circumstances surrounding this testator, may reasonably be construed to indicate the use by the testator of heirs instead of children. When he executed the will his purpose was to give to his son George in no event a greater interest than a life interest. George had then three children. When the testator gave this remainder "to his heirs . . . . in three equal portions," he unquestionably referred to the portions which each grandchild would have; and he emphasized this by the addition "share and share alike forever." Equality in the distribution was his reiterated purpose. Among what

heirs could he divide this in three equal portions? There were none to whom the three portions could apply except these living children of George, or the living children of the testator. Unless the three was intended to apply to either his three living grandchildren or his living children, it had no meaning, since the testator had no means of knowing how long he would live or how many heirs of George would be living at his decease. He could not then name the heirs nor the number of portions needed to give each heir an equal portion. He did know the number of his children and of his grandchildren.

The words "in three equal portions share and share alike forever" are a part of the same phrase, and immediately follow the term "heirs" unseparated by punctuation. They qualify, explain, and limit the meaning of heirs. Nowhere in the will or in the surrounding circumstances is there any explanation or any fact suggestive of any to whom the three portions should apply except the three living grandchildren, or the three children of this testator, and we have already pointed out that the children of the testator were not intended. "Heirs" meant the children of George W. living at his death. If this be the true construction, the intention of the testator was to benefit immediate descendants, those living at his decease and not those born thereafter.

The devise in Article 9 of the residue to the trustees for the use of George W. Cornell for life "and upon his decease to his heirs forever" does not contravene the statute against perpetuities. "Heirs" is used in the sense of children. To hold otherwise would accord to the word "heirs" in Article 9 a different meaning from that attached to it in Article 8. This would violate a cardinal rule of construction—the 18th of Jarman's rules—that "words, occurring more than once in a will,

shall be presumed to be used always in the same sense, unless a contrary intention appear by the context, or unless the words be applied to a different subject." 2 Jarman on Wills, pp. 840–843 (5th Amer. Ed., Vol. 3, pp. 702–709); *Allen's Appeal,* 69 Conn. 702, 707, 38 Atl. 701; *Green* v. *Huntington,* 73 Conn. 106, 113, 46 Atl. 883; *Wood* v. *Wood,* 63 Conn. 324, 328, 28 Atl. 520.

The word "heirs" in Article 9 is applied to the same subject as in Article 8, and there is nothing in the context or surrounding circumstances which suggests a contrary intent. In maintaining this construction we are upholding the validity of this provision of the will and carrying out the testator's intent, and this is the solicitous care of the law.

The Superior Court is advised that questions (a) and (d), upon which its advice is asked by the trustee, should be answered in the affirmative, and questions (b) and (c) in the negative.

No costs will be taxed in this court.

In this opinion the other judges concurred.