BENJAMIN HARRIS *vs.* ARTHUR W. WEED ET ALS.

Third Judicial District, New Haven, January Term, 1915.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The word "heirs," in its primary meaning, designates those who, in the
absence of a will, are by law entitled to inherit the real estate of a
decedent; and it should be so construed in a will unless the language

Harris v. Weed.

of the instrument, when read in the light of the surrounding circumstances, clearly indicates that it was used by the testator in a different sense.

A testatrix who died in 1861 devised to her nephew, who was at that time about thirty years of age and had two children, the residue of all her real estate for life, "and after his death to be equally divided between his lawful heirs." *Held:*—

1. That the expression "lawful heirs" was to be interpreted in its primary sense as referring to his heirs generally, and therefore that the remainder to them was void under the statute against perpetuities in force at the time of her decease.

2. That the fact that the will was written hastily, without legal advice, for an illiterate testatrix, and that the nephew and his two children were undoubtedly preferred to the other relatives, did not tend to show that the word "heirs" was used in the sense of children.

3. That the use of the word "between," instead of "among," the "lawful heirs," did not imply that the two children of the nephew were specifically designated, especially in view of the probability of there being other issue who admittedly would be included in the provision.

A judgment rendered in an action for a partition-sale of a portion of a tract of real estate devised by will, is one *in rem*, and is therefore obligatory upon nonresident, nonappearing defendants who were served only by publication. Its effect, however, is confined to the specific piece of property sold, and the judgment does not estop such defendants, in subsequent litigation, from asserting the invalidity of the devise and their own title to another portion of the tract devised, notwithstanding the validity of such devise was involved in the former action and was therein held to be valid. Such determination does, however, operate *in personam* and as an estoppel, with respect to all the heirs at law of the testatrix who joined in the action as plaintiffs and who alleged the validity and effectiveness of the devise.

An acceptance of service by a nonresident defendant, signed outside of this State, is merely a substitute for the usual method of service, and is not equivalent to an appearance or to a submission to the jurisdiction of the court.

One who agrees to buy real estate is not bound to accept a conveyance which carries anything short of the full and complete title and interest.

Argued January 26th—decided March 2d, 1915.

SUIT to quiet and settle the title to real estate claimed to be owned by the plaintiff, and to secure a specific performance by the defendant Maury of his contract

to buy the property, and also for other relief, brought
to and tried by the Superior Court in Fairfield County,
*Burpee, J.;* facts found and judgment rendered for the
plaintiff, from which the defendant Maury appealed.
*Error and new trial ordered.*

*John E. Keeler,* with whom was *John C. Durey,* for
the appellant (defendant Maury).

*Nichols C. Downs,* for the appellee (plaintiff).

*Stanley T. Jennings,* for the appellee (defendant
Arthur W. Weed).

*Edward O. Jansen,* for the appellees (defendants
Nellie B. Mead *et al.*).

BEACH, J. The complaint alleges that the defend-
ant Maury entered into a written contract with the
plaintiff to purchase certain described real estate; that
the plaintiff was ready, able and willing to perform,
and offered to perform, but the defendant refused to
accept a deed or pay the purchase price, claiming that
there was an outstanding interest in some of the heirs
at law of one Abigail Waterbury, and that the plaintiff
had not offered to convey a good title. It also alleges
that the plaintiff derived his title to the premises
through a warranty deed given by the defendant Weed.
Plaintiff claims: (1) that the title to the premises be
settled and quieted and adjudged to be in the plaintiff;
(2) specific performance by the defendant Maury of
the contract sued on; (3) incidental damages for breach
of the contract; (4) as alternative relief, a judgment
against the defendant Weed for breach of warranty of
title.

All the heirs at law of Abigail Waterbury are made

parties defendant, including a number of nonresidents, most of whom have made default of appearance. Four nonresident heirs appeared and answered, but have not joined in this appeal.

The controverted question is whether there is any interest in the premises outstanding in the heirs of Abigail Waterbury, other than those whose interest is conveyed by the deed which the defendant Maury refuses to accept.

The material facts are found to be substantially as follows: In 1861, and prior thereto, Mary Waterbury, Maria Waterbury and Abigail Waterbury, were tenants in common, each owning an undivided one third of land in Darien, in which were included the premises in question. In 1861 Abigail Waterbury died, leaving a will, of which the disposing words are as follows:—

"*Item.* I do give, devise and bequeath all of my interest, right & title to my sister Mary to the house in which I do now reside.

"*Item.* I give to my sister Hannah, widow of Elisha Seely, two hundred dollars.

"*Item.* After the payment of all my just debts and funeral charges I give to my nephew, Jonathan Waterbury, the use & improvement of the residue of all my real estate & after his decease to be equally divided between his lawful heirs."

Abigail Waterbury left surviving her three sisters, one brother, now living, and the children of a deceased brother, who would have constituted her heirs at law in case of intestacy. Jonathan M. Waterbury, the life tenant under the residuary devise, was a son of the living brother.

.The plaintiff owned, and by his deed offered to convey to the defendant Maury, the entire interest formerly owned by Mary and Maria Waterbury, and the entire interest of Jonathan M. Waterbury, and of his children;

so that, if the remainder to the lawful heirs of the life tenant in the residuary devise can be saved by construing it as a remainder to the children of the life tenant, the deed as tendered was a good and sufficient conveyance; but if the remainder to the heirs of the life tenant cannot be so construed, it is void, and there is an outstanding interest in the other heirs of the testatrix, which is not conveyed by the deed.

The devise of the remainder to the heirs of the life tenant is on its face in conflict with the statute of perpetuities in force at the death of the testatrix; but the trial court found that the testatrix used the words "lawful heirs" in the sense of "children," and for that reason held the residuary devise valid and the plaintiff's deed sufficient.

The surrounding circumstances which influenced this conclusion are found as follows: The original will was written upon a small sheet of note paper, and was hastily drawn by the attending physician, who was not learned in the law, nor familiar with the exact and proper use of legal terms and phrases. It was executed during the last illness of the testatrix, who was an illiterate person, and signed by her mark, a few days before her death. Jonathan M. Waterbury, the life tenant under the residuary devise, had lived with the testatrix from infancy until about thirty years of age. At the time the will was executed he had two young children and lived with them near the home of the testatrix.

These facts indicate that the testatrix preferred Jonathan and his two children above her other relatives, and they may be sufficient to raise a doubt whether the scrivener or the testatrix fully understood the legal significance of the word "heirs"; but they have no tendency at all to show that in this will the word "heirs" was used in the sense of children. The rule on this

particular point is well settled by repeated decisions of this court, of which the latest expression is as follows: "The word 'heirs,' in its primary meaning, designates those who in the absence of a will are by law entitled to inherit the real estate of a deceased. . . . This is the meaning which is to be given to it in the construction and interpretation of wills, unless, when read in the light of the circumstances surrounding the testator, it clearly appears from the will itself that he used the word in a different sense." *Allen* v. *Almy*, 87 Conn. 517, 522, 89 Atl. 205.

This does not mean that the word "heirs" in a will is an ambiguous word, so that extrinsic evidence is in every case admissible to show in which of two equally possible meanings the testator probably used it. It means that the word, when used in a will, has a primary significance from which it cannot be wrested unless there is something in the language of the will itself, when read in the light of the surrounding circumstances, which clearly indicates that it was used in a different sense.

The only language in this will which is pointed to as indicating that the testatrix used the word "heirs" in any other than its natural and primary sense, is the use of the word "between", instead of "among," in the provision for an equal division of the remainder interest between the heirs of Jonathan M. Waterbury. This is said to indicate that she had in mind the two young children of Jonathan. Jonathan, however, was then but little more than thirty years of age, and might be expected to have other issue, as in fact he did have one other, and the plaintiff is compelled to admit that the testatrix intended all of the children of Jonathan, whether two or more, to share equally in the remainder. The alleged dual significance of the word "between" does not, therefore, tend to show that the testatrix in-

tended to refer to children rather than to heirs. It is also very doubtful whether, in this context, the word has any dual significance whatever. *Lord* v. *Moore,* 20 Conn. 122. We think the word "heirs" in this will must be read in its primary sense; that under a long line of decisions, which need not be cited and cannot now be questioned, the remainder to the heirs of the life tenant is obnoxious to the statute of perpetuities in force at the death of the testatrix; and that there is or may be an outstanding interest in the heirs of the testatrix.

The next question is whether these heirs, or all of them, are estopped, by two prior adjudications of the Superior Court in Fairfield County, from claiming that the devise of the remainder to the heirs of the life tenant is void.

The first of these prior actions was a suit for a sale in partition, brought by one Fitzpatrick in 1892, to clear his title to a portion of the tract included in the residuary devise, on which he had erected buildings, supposing himself to be the sole owner in fee. All the heirs of Abigail Waterbury were made parties defendant, and the validity of the residuary devise was drawn in question and determined incidentally to the distribution of the proceeds of the sale among the defendants. The case was referred to a committee, who found, among other things, that the testatrix used the word "heirs" in the residuary devise as meaning children. The judgment recites the acceptance of the report of the committee, and finds that the residuary devise is valid, and that the devisees under the will of Abigail Waterbury are the owners of her one-third interest in the tract sold. The judgment also recites that many of the defendants are nonresidents and citizens of other States; that sufficient notice by publication of the pendency of the action had been given to all of the

defendants; and that with the exception of certain minor defendants, who appeared by a guardian *ad litem*, appointed for that purpose, all of the defendants made default of appearance.

Conceding that the judgment is binding on all resident defendants, whether they appeared or not, the question is to what extent it binds the nonresident defendants who were not otherwise served with process than by publication, and who did not appear.

The law as to the effect of judgments founded on substituted service by publication, upon nonresident defendants, has not been disturbed since it was conclusively settled by the Supreme Court of the United States in *Pennoyer* v. *Neff*, 95 U. S. 714. We quote, from page 727, a portion of the opinion specially applicable to this case: "Substituted service by publication, or in any other authorized form, may be sufficient to inform parties of the object of proceedings taken where property is once brought under the control of the court by seizure or some equivalent act. The law assumes that property is always in the possession of its owner, in person or by agent; and it proceeds upon the theory that its seizure will inform him, not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale. Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the State, or of some interest therein, by enforcing a contract or a lien respecting the same, or to partition it among different owners, or, when the public is a party, to condemn and appropriate it for a public purpose. In other words, such service may answer in all actions which are substantially proceedings *in rem*. But where the entire object of the action is to determine the personal rights and obligations of the defendants, that is,

where the suit is merely *in personam*, constructive service in this form upon a non-resident is ineffectual for any purpose. Process from the tribunals of one State cannot run into another State, and summon parties there domiciled to leave its territory and respond to proceedings against them. Publication of process or notice within the State where the tribunal sits cannot create any greater obligation upon the non-resident to appear. Process sent to him out of the State, and process published within, are equally unavailing in proceedings to establish his personal liability."

If the case of Fitzpatrick v. Waterbury had been a suit for partition and nothing more, it would follow very plainly, from the foregoing statement of the rule, that the nonresident and nonappearing defendants in that case are bound by the judgment to the extent of their interests in the property sold, and not otherwise. But the claim is made that because the action was *in rem*, so far as the land was concerned, and because the title to the land depended on the validity of this provision of Abigail Waterbury's will, the nonresident defendants were bound to come in and defend, not only their interests in the land, which was the subject of the action, but also any larger rights which might be involved in the determination of the validity of the residuary devise. This claim loses sight of the real basis of the rule laid down in *Pennoyer v. Neff*, and assumes that some legal or obligatory notice was given to those nonresident defendants that the validity of this residuary devise was to be determined. That is not so. If publication is required by statute, the statute must be followed in order that due process of the local law may be observed. In an international sense, however, it is the seizure of the property, or the equivalent act of taking it under the jurisdiction of the court for the purpose of disposing of it, which is supposed to take the

place of notice in giving validity to a judgment against a nonresident who does not appear. Actual notice is not necessary, and if given outside of the State is not obligatory upon a nonresident, and cannot therefore give the court any larger jurisdiction than it had already obtained by the seizure.

In the Fitzpatrick v. Waterbury case it does not appear from the judgment that any of the nonresident defendants had actual notice of the contents of the complaint, or were otherwise informed that the validity of the residuary devise of Abigail Waterbury's will was about to be litigated. But if they had such a notice they were not bound to act upon it. All they were legally bound to know and to act upon was that the particular premises described in the complaint had been taken under the jurisdiction of the Superior Court to be sold in partition; and we think that in fairness, as well as in law, they ought to be allowed to abandon their interests in that particular lot of land without prejudice to their rights in any other property affected by the residuary devise.

The claim is also made that the will itself should be considered as the subject of the action and the judgment affirming the validity of the residuary devise treated as a judgment *in rem*. That would be sound if the judgment had been rendered in the course of the settlement of the estate of Abigail Waterbury and while all her property was in the custody of the Court of Probate; or if the judgment had been founded on a suit for a construction of this residuary devise by a trustee or executor who brought the property affected by the devise actually or constructively into the Superior Court to determine what disposition should be made of it. But in this case the Superior Court had no property actually or constructively in its hands except the land sold, and the effect of the judgment as a judgment *in*

*rem*, or, to speak more accurately, a judgment founded upon jurisdiction over the *res*, is limited to the land sold.

The second of these prior litigations in the Superior Court was a suit for sale in partition of another portion of the tract affected by this residuary devise, brought by Hester C. Waring and twenty-six other heirs of Mary and Maria Waterbury in 1903. All of the plaintiffs were also heirs of Abigail Waterbury, but they made no claim as heirs of Abigail to any right, title or interest in the undivided one-third interest affected by the will of Abigail. On the contrary, they alleged in the complaint that the interest which Abigail formerly owned had been disposed of by her will, and that the same "is owned for the term of his natural life by the defendant, Jonathan M. Waterbury, with remainder in fee simple to the persons entitled thereto by the terms ·of the last will and testament of said Abigail Waterbury," etc. The judgment follows the allegations of the complaint and finds, as to the proceeds of the tract in question, that "the defendant, Jonathan M. Waterbury, is entitled to the use of one-third thereof for the term of his natural life, and at his death said third should be paid to the persons entitled to the same under the provisions of the will of Abigail Waterbury, deceased."

This judgment necessarily involves a determination that the residuary devise in Abigail's will was valid and effectual, and we think it is clear that all the heirs of Abigail who joined as plaintiffs in this action are bound by the judgment as a judgment *in personam* establishing the validity of the residuary devise.

All of the then living heirs of Abigail Waterbury were joined either as plaintiffs or as defendants in the Waring case; and among the defendants in that action were four nonresident heirs of Abigail: Jacob Dubois, Charles L. Waterbury, Edward L. Waterbury, and

John M. Waterbury. These four signed acceptances of service in the usual form, dated and signed in New York and afterward filed in the Superior Court.

The plaintiff claims that the signing and filing of these acceptances of service is equivalent to a general appearance. The judgment, however, finds that the defendants made default of appearance. Independently of this, the weight of authority appears to be that a mere acceptance of service by a nonresident, signed while outside of the jurisdiction, is not equivalent to an appearance or to a submission to the jurisdiction of the court. 32 Cyc. 450, ¶ 6, and cases cited. This accords with the object and effect of the acceptance, which is merely to save the plaintiff the trouble and expense of making such service as he would otherwise be compelled to make.

For reasons already stated, these four nonresident defendants are not estopped by the judgment in Waring v. Waterbury, except as regards the land sold.

Our conclusion is that all the heirs of Abigail Waterbury who were parties to the suit of Waring v. Waterbury, excepting Jacob Dubois, Charles L., Edward L., and John M. Waterbury, are estopped by the judgment in that action from contesting the validity of the residuary devise in Abigail Waterbury's will.

The interest which remains outstanding in these four heirs is very small, but it is sufficient in law to justify the defendant Maury in refusing to accept a conveyance which does not include that interest.

There is error, the judgment is set aside and the cause remanded with direction to enter judgment in favor of the defendant Maury, and to grant a new trial against the defendant Weed.

In this opinion the other judges concurred.