SAMUEL F. BEARDSLEY, ADMINISTRATOR, C. T. A., vs.
CORNELIA E. JOHNSON ET ALS.

Third Judicial District, New Haven, June Term, 1926.
WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

The term "heirs" or "lawful heirs," when used in a will, is to be given its primary meaning—those entitled by law to inherit by descent the real estate of a deceased person—unless it clearly appears from the will itself, read in the light of the circumstances surrounding the testator, that he intended it to bear a different meaning, such as children, next of kin, or those entitled by the statute of distributions to succeed beneficially to the personal property of another.

Presumptively words have the same meaning when repeated in a will, unless the context indicates the contrary, or unless the words are applied to a different subject.

To accord with the intent of the testator, the terms "representatives," "legal representatives" and "personal representatives" may be construed to mean executors and administrators, children or descendants, next of kin or distributees, or devisees.

Beardsley *v.* Johnson.

If two modes of construction are fairly open, one of which will render a gift void as an illegal perpetuity, and the other valid and operative, the latter must be preferred.

A testator is presumed not to have intended intestacy as to any part of his estate; and the courts will seek a construction which will avoid that result.

The testator left the bulk of his property, including his residuary estate, to a favorite niece, who had lived with him upon the closest terms of intimacy and affection and had cared for him as a daughter, and to her three children, to two of whom, in addition to other gifts, he devised the life use of separate parcels of real estate with remainders, respectively, to their "lawful heirs." In another portion of his will, but referring to the same subject, he described these lawful heirs as "his or her child, or children and legal representatives" and as "such lineal descendants." In a codicil he declared his purpose that this niece and her children "shall have such equal, or nearly equal, portions of my estate, as I am able to give them." To his other heirs at law, consisting of two nieces and two grandnieces, with none of whom he was particularly intimate, he made relatively small bequests. In the present case the claim was made that the term "lawful heirs," as used in connection with the devises of real estate, must be given its primary meaning and thus construed to include descendants of every degree and that, therefore, these gifts were void as in violation of the statute of perpetuities in force at the date of the testator's death. *Held (One judge dissenting)*:

1. That there was no merit to this claim, since, if upheld, the gifts would either pass under the residuary clause, in which event the other residuary devisees would take an unintended share in them and the obvious purpose of the testator, to provide houses for these beneficiaries during their lives, would be defeated by the provision therein that "all of my real estate, not specifically devised," shall be sold and converted into money or securities; or, if the residuary clause were also invalid, the gifts would then become intestate estate, and the apparent desire of the testator, to prefer his favorite niece and her children over his other heirs and to secure equality of distribution among them, would fail.

2. That the term "lawful heirs" must be construed to mean children.

Argued June 2d—decided July 30th, 1926.

SUIT for the construction of the will of Luzon W. Clark, late of Bridgeport, deceased, brought to the Superior Court in Fairfield County and reserved by

the court, *Nickerson, J.,* upon the admitted allegations of the substituted complaint, for the advice of this court.

*Samuel F. Beardsley,* for the plaintiff.

*Howard L. Shaff,* for the defendants Cornelia E. Johnson *et al.*

*Sanford Stoddard,* for the defendants Caroline French *et al.*

*Harold E. Drew,* for the defendants Hattie E. Haugh *et al.*

WHEELER, C. J.   The questions of law concerning the will we are asked to give our advice upon arise under Article III, and Codicil B, (quoted in the footnote) being a substitute for Article V of the will as first written.   They all relate to the identical words— "lawful heirs"—found in this article and codicil. "Heirs" or "lawful heirs," as used in a will may have several meanings.   In the connection "lawful heirs"

---

"ART. III.   I give and devise to Frank C. Johnson, son of said Jane C. Johnson, that certain lot of land with the Buildings thereon, situated in said Bridgeport [specified] . . . for his use during his natural life, subject however to the rights of said Jane C. Johnson, his mother . . . for the reasonable and proper enjoyment of said rights, during her life; and upon the death of said Frank C. Johnson, I give the said premises, subject to the said rights of said Jane C. Johnson therein to his lawful heirs forever.

"ART. IV.   I give and devise to said Jane C. Johnson that certain lot of land with the buildings thereon, situate in said Bridgeport [described], . . . to be for her use during her natural life.

"And I give to Morris B. Beardsley, Esq., of said Bridgeport Two Thousand Dollars to have and hold In Trust for the use and benefit of said Jane C. Johnson during her natural life; and upon her decease I give the same to her lawful heirs forever.

"ART. VI.   I give to Marcus O. Wheeler, Esq. of Trumbull, Connecticut, Ten Thousand Dollars, to have and hold in Trust for the

Beardsley *v.* Johnson.

are here used the parties concede they must mean either those who inherit, that is descendants of any degree, or children. If they mean the former they are within the statute of perpetuities, repealed in 1895, but in existence at the date of this will, and in consequence of their conflict with the provisions of this statute, the article and codicil are invalid. If they mean the latter, children, they do not offend against the statute and both article and codicil are valid.

use and benefit of Gertrude A. Johnson, daughter of Jane C. Johnson, during her natural life.

"And upon her death I give and devise the same to her lawful heirs forever."

Codicil, Exhibit B, dated November 18th, 1885.

"Whereas in Art. V—of my said Will I gave to Hattie E. Haugh a certain lot of land in Birmingham, Conn. and made certain provisions for the erection of buildings thereon, and Whereas I desire to change and modify said provisions, therefore I revoke and annul said Art. V—and in lieu therefor will and direct as follows, to wit—

"I give and devise to Hattie E. Haugh, aforesaid, that certain building lot situate in Birmingham, Connecticut, purchased recently by me, reference to the Deed being here made for a more particular description of the same to her, for her use during her natural life; I propose to erect buildings thereon at a cost not exceeding Five Thousand Dollars, but if such buildings shall not be built, or completed, at my decease, then I direct and authorize my executor, or legal representative, to advance the said sum of Five Thousand Dollars, or if partially done, and not completed such sum as may be necessary to complete the same—but it is expressly provided that the entire costs of such buildings to myself and my estate—shall not exceed altogether the sum of Five Thousand Dollars, and that the said Hattie E. Haugh and her husband Henry A. Haugh, shall choose their own plans and have the work done according to their own notions, and the money, if any, paid by my Executor, or legal representative, shall be drawn, or paid on the order of said Henry A. Haugh and Hattie E. Haugh, on account of said building.

"And I give to Morris B. Beardsley, Esq. of Bridgeport, Ct. Two thousand Dollars to have and hold in Trust for the use and benefit of said Hattie E. Haugh during her natural life, and upon her decease I give and devise the said lot and buildings and money to her lawful heirs forever."

Numerous other questions of construction arise on the face of this will which we are not asked to advise upon. Some of these we are obliged to consider and determine since they are involved in the questions we are asked to decide.

"Lawful heirs" or "heirs" used in wills, in its primary meaning, "designates those who in the absence of a will are by law entitled to inherit the real estate of a deceased." *Nicoll* v. *Irby,* 83 Conn. 530, 534, 77 Atl. 957; *Allen* v. *Almy,* 87 Conn. 517, 522, 89 Atl. 205. This is their meaning unless the will, read in the light of the circumstances surrounding the testator, clearly indicates that he used the words in a different meaning. *Hartford Trust Co.* v. *Purdue,* 84 Conn. 256, 258, 79 Atl. 581; *Harris* v. *Weed,* 89 Conn. 214, 219, 93 Atl. 232. Applying this test we have held "lawful heirs" or "heirs" meant: children, in *Allen* v. *Almy,* 87 Conn. 517, 89 Atl. 205; *Hoadley* v. *Beardsley,* 89 Conn. 270, 277, 93 Atl. 535; *Russell* v. *Hartley,* 83 Conn. 654, 664, 78 Atl. 320; *Mitchell* v. *Mitchell,* 73 Conn. 303, 47 Atl. 325; those entitled by the statute of distribution to succeed beneficially to the personal property of another, in *Beach* v. *Meriden Trust & Safe Deposit Co.,* 98 Conn. 821, 824, 120 Atl. 607; *Morse* v. *Ward,* 92 Conn. 408, 103 Atl. 119; *Ruggles* v. *Randall,* 70 Conn. 44, 48, 38 Atl. 885; and next of kin, in *Miller* v. *Metcalf,* 77 Conn. 176, 58 Atl. 743.

The solution of this question is primarily the ascertainment of the intention of the testator. This requires an analysis of the will in the light of the circumstances surrounding the testator when he drafted and executed it; these include the natural objects of his bounty, the affection he entertained for, and the intimacy of his contact with, them, and what the will would give to each if "lawful heirs" be construed to mean those who would inherit from, or to mean the

children of, the objects of his bounty to whom he had devised a life use.

The heirs at law of the testator were his three nieces, Jane C. Johnson, Catherine Burton and Caroline French, children of his sister Mrs. Briscoe, and two grandnieces, Catherine E. Powell and Caroline A. Terrill, children of Amanda B. Vredenberg, a daughter of Mrs. Briscoe. Mrs. Johnson was taken into the home of the testator and brought up as a member of his immediate family until her marriage, he having no children of his own. She was always known as Jane Clark until her marriage, and was married under that name; after her marriage she was known as Jane Clark Johnson. None of the other heirs at law of the testator were taken into the home of the testator or brought up as members of his immediate family. After the decease of the testator's wife in 1886, Mrs. Johnson again became a member of the testator's household and lived with him until his death, about two years later, caring for him during this time as a daughter.

The heirs at law of Mrs. Johnson were her children, Hattie E. Haugh, Frank C. Johnson, and Gertrude A. Johnson, later Osborne, who later resided in Virginia until her death in 1898. The testator in letters referred to two of these children, Mrs. Haugh and Frank C. Johnson, who were his grandniece and grandnephew, as his grandchildren. These facts are quite sufficient to show that the testator regarded Mrs. Johnson as a loving and dutiful daughter, and that he did not entertain the same affection toward his other heirs, nor have the same intimacy with them as he had with Mrs. Johnson and her children. They also furnish a basis for the inference that his regard for Mrs. Johnson was a very natural outgrowth of their relationship. A relationship of this nature, between

a testator and one of the objects of his bounty, furnishes a reasonable basis for expecting that the testator would in his will give to her who stood in the relationship of daughter, or to her and her children, generously, and in preference to the other objects of his bounty toward whom his relations were apparently not of close intimacy or affection. This relationship is a significant circumstance in the light of which the will must be construed.

Let us examine the will to find out to which of the objects of his bounty—his heirs—he did give his estate, and whether his gifts indicate a preference on the part of the testator for any of these. He gave his household furniture and certain classes of personal belongings to his wife for life, and at her decease he gave the life use of these to Jane C. Johnson. He also gave to her (1), in Article IV, a lot with the buildings thereon for life, remainder to her lawful heirs, (2) in trust the life use of $2,000, which, upon her decease, he bequeathed to her lawful heirs, (3), in codicil C, to her absolutely $5,000, to equal advances made to Frank C. Johnson, her son, and (4) in Article VIII, section 9, he gave the residue of his estate, real and personal, to "Jane C. Johnson, Frank C. Johnson, Hattie E. Haugh, and Gertrude A. Johnson, to be divided equally between them, and their legal representatives share and share alike. But in case either die and leave no lineal descendants surviving him or her, then the same shall go to the survivors, or survivor, of them and their heirs forever."

He gave to Frank C. Johnson, son of Jane C. Johnson, (1) his gold watch and chain, (2), in Article III, a lot with buildings thereon for life and subject to this life use and to certain specified rights of his mother therein "to his lawful heirs forever," and (3) one fourth of the residue as above described in Article

VIII, section 9. The testator also gave in a codicil, Exhibit C, $2,000 absolutely to Frank C. Johnson's wife, Cornelia Johnson.

.He gave to Hattie E. Haugh, daughter of Jane C. Johnson, (1) in Codicil B, in substitution of Article V of the will, a lot with buildings thereon to be erected by the testator at a cost of $5,000, or by advances by his executor or legal representatives, (2) in trust the use for life of $2,000, "and upon her decease I give and devise the said lot and buildings and money to her lawful heirs forever," (3) in Codicil C, $5,000 absolutely, and (4) one fourth of the residue as above described in Article VIII, section 9.

He gave in Article VI, to Gertrude A. Johnson (later Osborne), (1) in trust the life use of $10,000, "and upon her death I give and devise the same to her lawful heirs forever,"· and (2) one fourth of the residue as above described in Article VIII, section 9.

He gave to his other heirs at law legacies aggregating in value very much less than the property given Jane C. Johnson and her children, as follows: To Catherine Burton, a niece, $1,000, and to Nathaniel Burton and Eugene Burton, children of Catherine Burton and grandnephews of the testator, $500, "to be equally divided between them, or the survivor of them, in case either of them should die before it comes into their possession, to be theirs absolutely"; to Kate Powell and Carrie Turrill, grandnieces, and children of Amanda B. Vredenberg, a niece, in trust to each the life use of $1,000, with power in the trustee to use the principal for their support and at the death of each the testator directs the trustee to pay over "the principal, or what remains thereof, to her lawful heirs to be theirs forever"; to Caroline French, a niece, $1,000. All of the other legacies aggregated $1,700.

If "lawful heirs," as used in the provisions of the

will containing these devises and bequests to Jane C. Johnson and her children, means children, and not those who inherit from her, it is evident that he has given the great bulk of his estate to his niece Mrs. Johnson and her children, for whom he entertained a far deeper affection than he had for any other heirs at law, and to this niece to whom he was under the greatest of obligation for the care and service of a daughter. If "lawful heirs," as used in Articles III, IV and VI, be construed to mean those who inherit and not children, the devises of the lot and buildings to Frank C. Johnson and Mrs. Haugh, and the bequests to Jane C. Johnson, Mrs. Haugh and Mrs. Osborne (Johnson) will be void as constituting illegal perpetuities and the specific devises and bequests would then fall into the residue, if this be valid, or else become intestate estate. If these devises and bequests fall into the residue, and that be valid, they would be shared in equal parts by Jane C. Johnson and her three children. The executor would then under Article IX be obliged to sell and convey "all of my real estate, not specifically devised, and convert the same into money or good securities," etc. Is it reasonable to suppose the testator so intended? If these devises and bequests become intestate estate two nieces of the testator, Catherine Burton and Caroline French, and the two children of Catherine E. Powell, a niece, would share in these as intestate estate together with the other heirs of the testator. And whether the devises and bequests fell into the residue or became intestate estate, the testator's intended dispositions would have been defeated.

In codicil, Exhibit B, the testator, in case the building on the lot he gave to Mrs. Haugh shall not be completed at his decease, directs his executor or legal representative to advance the $5,000 or any part

thereof as may be needed to complete the same. Surely the testator never intended to direct the executor to advance funds with which to erect this building and then require him to sell it and divide the proceeds among the four named beneficiaries. The testator intended by these devises to provide homes for Frank C. Johnson and Mrs. Haugh and their lawful heirs. It is far more reasonable that he was doing this for their children than to have these homes sold, and the proceeds divided as intestate estate among all of his heirs, or divided under the residuary clause, by which division Mrs. Osborne would acquire a part of the proceeds of these devises contrary to the intention of the testator as expressed in his will. "Lawful heirs" is used in these several articles and in codicil, Exhibit B, in the same relation; it must be presumed that this use, wherever found in the will, was used in the same sense, unless it clearly appears to have been used with a contrary meaning. *Hoadley* v. *Beardsley*, 89 Conn. 270, 278, 93 Atl. 535; *Pease* v. *Cornell*, 84 Conn. 391, 399, 80 Atl. 86. In Article IV and Codicil B, they are used in connection with both devises of real estate and bequests of money. As to the bequests of money no claim is made that these are either void, or fall within the residuary clause. "Lawful heirs" cannot mean children when used as to personal property, and those who inherit when used as to real estate, in one and the same article of the will. They must in that connection have a like meaning in relation to either class of property.

After making in the several articles of the will, the several devises of real estate and the bequests of money in trust, the testator in Article VII provided:

"Each of the foregoing Trustees is to invest, or keep invested, the principal sum in good real estate first mortgage securities, or in such securities as the Laws of

this State allow Trust funds to be invested in, and the income thereof, after deducting the necessary expenses of the Trust therefrom, shall be paid over to the beneficiaries respectively, Semi-annually during their respective lives.

"And upon the death of each of said beneficiaries the principal Estate shall be transferred to his, or her child, or children and the legal representatives, if any there be, of such child or children, deceased, in equal portions, share and share alike, to be theirs and their heirs forever:—And in default of such lineal descendants then living—I give the principal Estate to such person or persons, in such parts and proportions, as they shall respectively by his or her last Will and Testament appoint to be theirs forever—"

By the "principal sum" and the "principal estate" the testator referred to the three trust estates which he had created in Articles IV, VI and Codicil B, in certain sums of money. There was no occasion to repeat in this article the provisions already completely made in the preceding articles. But its presence serves to make clear the meaning of "lawful heirs." When the testator provides that "upon the death of each of said beneficiaries," that is, Jane C. Johnson, Mrs. Haugh and Mrs. Osborne, the principal estate, that is, the fund of which they had had the life use, shall be transferred to her child or children, or the legal representatives of such child or children, the latter expression is used with the meaning of children. The testator here makes clear that by his use of "lawful heirs" in these several articles, he meant child or children as here used in Article VII. But it is said the subsequent provision —"And in default of such lineal descendants then living—I give the principal estate to such person or persons . . . as they shall . . . by will . . . appoint," makes this construction impossible, since lineal

descendants means those who inherit by blood. The term is not confined to this meaning. It may mean children. "Such lineal descendants" refers to the children already described in the prior sentence. There is nothing else to which "such" can refer. The use of lawful heirs for children in the trusts created in Articles IV, VI and Codicil B, naturally carries the same meaning when applied to devises of real estate made in Article IV and Codicil B, when there is nothing in the will to indicate that the testator intended a different meaning. This too is the legal inference so uniform as to have become a rule of construction. In *Hoadley* v. *Beardsley*, 89 Conn. 270, 278, 93 Atl. 535, we find it stated: "By reference to the codicil we find that the testatrix used the terms 'issue' and 'lawful issue' where the persons intended to be thus described were unmistakably children, and, as it happened, the children of the very persons referred to in the paragraph under consideration. There is nothing in the will to indicate, even inferentially, that their equivalent—'legal issue'—in the latter paragraph, were used more comprehensively. Here is a strong indication that the testatrix used the words there in the same narrow sense, limited to children, in which she used similar words in the codicil." And in *Pease* v. *Cornell*, 84 Conn. 391, 399, 400, 80 Atl. 86, we say: "The devise in Article 9 of the residue to the trustees for the use of George W. Cornell for life 'and upon his decease to his heirs forever' does not contravene the statute against perpetuities. 'Heirs' is used in the sense of children. To hold otherwise would accord to the word 'heirs' in Article 9 a different meaning from that attached to it in Article 8. This would violate a cardinal rule of construction—the 18th of Jarman's rules—that 'words, occurring more than once in a will, shall be presumed to be used always in

the same sense, unless a contrary intention appear by the context, or unless the words be applied to a different subject.' "

In the last codicil to his will, Exhibit C, made two years before his death, the testator inserted a recital of his purpose in giving therein legacies of $5,000 to Jane C. Johnson, Mrs. Haugh, and Mrs. Osborne, to be that he had advanced $5,000 to Frank C. Johnson, and desired that the four named persons "shall have such equal, or nearly equal, portions of my estate, as I am able to give them." This express declaration emphasizes the scheme of the will—equality of distribution between these four named persons. Equality in distribution among lawful heirs, in the absence of indication of a diverse intent, looks to and requires a *per capita* distribution. The testator could not have contemplated a division among lawful heirs whatever the degree of their relationship might be. Such a construction would destroy the scheme of equality of the will. The testator gives in the residuary clause the residue to Jane C. Johnson and her three children to be equally divided between them and their legal representatives. This latter term as used in a will may mean the executor or administrator, children or descendants.

"The terms representatives, legal representatives, and personal representatives of deceased persons, were used interchangeably, and primarily meant those artificial representatives, the executors and administrators, who by law represented the deceased, in distinction from the heirs who were the natural representatives. But, as under statutes of distribution executors and administrators are no longer the sole representatives of the deceased as to personal property, these words have lost much of their original distinctive force, and the terms representatives, legal

representatives, and personal representatives, are used to describe either executors and administrators, children or descendants, next of kin or distributees, and devisees; and when not applied to those who represent deceased persons, they may mean trustees in insolvency and receivers." *Staples* v. *Lewis*, 71 Conn. 288, 290, 41 Atl. 815.

There is no slightest suggestion in the will that the testator desired to give, or was likely to give, the remainder interest in the share of these four named devisees and legatees in the residue to this executor. It would be an unnatural disposition to make and a construction which ought not to be adopted unless the terms of the will make it clearly manifest that this was the intention of the testator. If this should be construed to mean lineal descendants, it would destroy the testator's scheme of equality. Whatever construction be given to legal representatives and lineal descendants as used in the provisions of the will and codicil to which we have referred, it would still be true that the disposition of the remainder interest in all of these devises and bequests would divide the testator's estate among persons and in amounts not intended by the testator.

"Heirs at law" is not by itself an ambiguous term; the terms of the will read in the light of the surrounding circumstances as interpreted by our decisions may make it so, for these may indicate that the testator intended its use in another sense. So read, this term in the will we are construing may reasonably be held to mean children. *Hartford Trust Co.* v. *Purdue*, and *Harris* v. *Weed, supra*. Certain of our rules of construction serve to aid in our search for the true intention of the testator. "If two modes of construction are fairly open, one of which will turn a bequest into an illegal perpetuity, while by following the other it

would be valid and operative, the latter mode must be preferred." *Wolfe* v. *Hatheway,* 81 Conn. 181, 185, 70 Atl. 645; *Hoadley* v. *Beardsley,* 89 Conn. 270, 277, 93 Atl. 535. A construction of a will which will avoid intestacy is to be sought; to this end, the presumption must be entertained that the testator did not intend intestacy as to any part of his estate. *White* v. *Smith,* 87 Conn. 673, 89 Atl. 272; *Allen* v. *Almy,* 87 Conn. 517, 89 Atl. 205; *Wallace* v. *Wallace,* 103 Conn. 122, 134, 130 Atl. 116, 120.

We answer questions (1) and (2) no, and question (3) yes, and question (9), that the reasonable expenses and counsel fees incident to this action should be borne by the properties devised in remainder in Article III and codicil, Exhibit B, in proportion to their value as of the date of the bringing of this action.

No costs in this court will be taxed in this action in favor of any of the parties.

In this opinion CURTIS, HAINES and HINMAN, Js., concurred.

MALTBIE, J. (dissenting). The very able briefs filed in this court when *Leake* v. *Watson,* 60 Conn. 498, 21 Atl. 1075, was before it for decision substantiate the recollection of older members of the bar that lawyers were then generally of the opinion that a gift in remainder to the "heirs" of a life tenant was valid, the then existing statute of perpetuities being considered to require only that the remainder vest immediately at the death of the life tenant. *Leake* v. *Watson* upset that opinion, by construing the statute to require that any estate, to be valid, must vest in no more remote descendants than the children of one who was living at the death of the testator. Undoubtedly this decision had the effect of invalidating many testamen-

tary provisions, and aroused in bench and bar an antipathy to the statute that served to fortify the proper rule of construction growing out of the fair assumption that a testator would intend a valid rather than an invalid provision in his will. That situation, while it may explain such a testamentary disposition as the one before us, cannot justify overturning the fundamental rule that the terms of a will are to be given their primary meaning unless, as the majority opinion expresses it, "the will, read in the light of the circumstances surrounding the testator, clearly indicates that he used the words in a different meaning."

The majority opinion, in finding in the instant case such a clear indication, stresses the evident preference of the testator for the Johnson family, and then purports to apply the very logical process of contrasting the intent which it is necessary to ascribe to the testator according as he is assumed to have used the phrase in question in one or the other of its suggested meanings; but the vice of the opinion lies in this, that over against the intent that is to be attributed to him if the words "lawful heirs" are to be construed to mean children, is set, not the intent which would have led him to use them in a broader sense, but the effects which must follow from the invalidity of the provisions if that construction is adopted, effects which are entirely foreign to any intent which he could by any possibility have held, and which result, contrary to his expectation that the provisions of the will would carry the property, from the application of the statute against perpetuities; surely such a comparison affords no sound basis for argument. The majority opinion also points to the testator's expressed desire for equality among the beneficiaries; but what he wishes is that "said Frank C. Johnson, his mother, Jane C. Johnson, and his sisters, Hattie E. Haugh and

·Gertrude A. Johnson, shall have such equal, or nearly equal, portions of my estate, as I am able to give them," and that wish is fulfilled, however we construe the phrase in question; indeed, the inclusion of the mother with her children precludes any thought that he intended an equality embracing other generations; and, if he had intended that, it is secured as much by one construction of the words, "lawful heirs," as by the other. The third consideration suggested by the majority opinion arises out of the words of the seventh article, wherein the testator directs that upon the death of each of the life beneficiaries the principal of the fund provided for him or her is to be transferred to "his, or her child, or children and the legal representatives, if any there be, of such child or children, deceased, in equal portions, . . . and in default of such lineal descendants," then to others; and the opinion, finding here the testator's explanation of what he meant by "lawful heirs," first assumes "legal representatives" to mean children and so gives to the correlative "lineal descendants" a like meaning; but apart from the lack of any foundation for its underlying assumption, this argument gets nowhere; for it would make "lawful heirs" include, not only the children of the named beneficiaries, but their children as well, and this would bring about a violation of the statute just as much as would result from giving the phrase its primary meaning.

Truth to tell, there is not any logical basis for construing that phrase to mean children. The seventh article does, indeed, show the intention of the testator, but it is not that which the majority opinion finds evidenced there. In preceding articles he has established trust funds for Mrs. Johnson and each of her daughters and in each instance at the death of the life beneficiary has given the principal to "her lawful heirs

forever." In the seventh article he gives directions as to the administration of these trusts; he tells how the funds shall be invested and the income paid over; and then, in the part above quoted, he gives instructions as to the disposition of the principal sums provided for each when he or she shall die. He has given it to his or her "lawful heirs"; now he directs its transfer to his or her children, or if any have died, to legal representatives, and he correlates with this disposition, the phrase "lineal descendants" in the next clause. The only rational explanation of these provisions lies in giving to the words "lawful heirs" a meaning which would include more remote generations than the children of the named beneficiaries. As the majority opinion points out, if this be the meaning of the words "lawful heirs" as used in this connection, the same words must be given a like meaning when used elsewhere in the will.

If authority were needed to support this view, it is amply found in *Bridgeport Trust Co.* v. *Parker,* 97 Conn. 245, 116 Atl. 182.