71  283
72  595

ROBERT J. WALSH vs. JAMES McCUTCHEON ET AL.

Third Judicial District, Bridgeport, Oct. Term, 1898. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

After making numerous bequests, a testator gave all his real estate, together with his farm stock and utensils, household furniture and wearing apparel, to O "and his heirs forever;" but provided that if O "should die without leaving any heirs," the real estate should go to A and his heirs forever. The residue of his estate was given to O, D and S, in fee, in equal parts, with a provision that "if there should not be enough, outside of what I have given O, to pay all the above legacies," they should abate *pro rata*. O survived the testator and has three children. *Held* that the obvious general intent of the testator to make O a favored beneficiary, coupled with the express gift to him in fee, ought to prevail over any implication arising from the gift over if O "should die without leaving any heirs;" that such expression must be construed to apply only to O's death during the testator's lifetime, and therefore could not avail to reduce the fee given to O to a lesser estate.

Argued November 10th—decided November 29th, 1898.

SUIT to enforce the specific performance of the defendant McCutcheon's agreement to purchase certain real estate; brought to the Superior Court in Fairfield County and reserved by that court, *George W. Wheeler, J.*, upon a finding of facts, for the consideration and advice of this court. *Judgment advised for the plaintiff.*

The case is sufficiently stated in the opinion.

*Samuel Fessenden*, for the plaintiff.

*John E. Keeler*, for the defendant McCutcheon.

*John C. Chamberlain,* with whom was *Frederick A. Hubbard,* for the defendants Augustus I. Mead et al.

*Charles D. Burnes,* for the defendants Lydia Mead et al.

ANDREWS, C. J. The plaintiff and the defendant McCutcheon, on the 26th day of March, 1898, entered into a written agreement by which the plaintiff was to convey to said defendant a certain piece of land in the town of Greenwich, and the latter was to pay therefor the sum of $2,500 an acre. The plaintiff agreed to execute, acknowledge and deliver to said defendant or his assigns " a proper deed containing a general warranty and the usual full covenants for the conveying and assuring to him and them, the fee simple in the premises, free from all encumbrances." The plaintiff prepared and duly executed a deed of the said premises, which in point of form fully complied with the agreement, and on the 12th day of April, 1898, tendered it to said defendant, who refused to accept the deed and pay for the land, for the reason that, as he alleged, the plaintiff was not on the said 12th day of April, nor at any time, the owner in fee simple of the land described in the agreement, and was not seized of any other estate in said lands than an estate for the life of one Oliver D. Mead, from whom he derived title.

The plaintiff derived his title to the premises from Oliver D. Mead, by a conveyance which was sufficient to convey to him the fee simple therein, provided the said Oliver D. Mead was himself seized of the said lands in fee simple. The land was free from all incumbrances. Oliver D. Mead derived his title to said lands under and by virtue of the will of Oliver Mead. That will, after making numerous bequests in sixteen paragraphs, provided as follows: —

" *Seventeenth.* I give, devise and bequeath all my real estate wheresoever situate, including my burial plot, all my stock and farming utensils on said real estate, all my household furniture of every description, and all my wearing apparel, to Oliver D. Mead, to him and his heirs forever. If the said **Oliver D. Mead** should die without leaving any heirs, then in

that event, I give my said real estate to Augustus I. Mead, to him and his heirs forever. *Eighteenth.* I give, devise and bequeath all the rest, residue and remainder of my estate of whatever nature or kind, to Silas D. Mead, Oliver D. Mead and Daniel S. Mead, Junior, to be equally divided between them, share and share alike, to them and their heirs and assigns forever. *Nineteenth.* If there should not be enough estate outside of what I have given to Oliver D. Mead, to pay all the above legacies, then in that event, I order and direct the executor hereinafter appointed, to pay each *pro rata,* that is, in proportion to the amount I have given to each. If any of the above legatees should die before my decease, then in that event, the legacy I have given to such legatee or legatees, I give and devise to the heirs of such deceased legatee or legatees."

This will was executed on the first day of December, 1882. The testator died March 17th, 1887. On both of said dates Oliver D. Mead was living, and had three children. Augustus I. Mead was living and had two children. All these persons are now alive, and they are the persons and all the persons contemplated in the said seventeenth paragraph of the will.

The general question presented by this record is, what title did Oliver D. Mead take in these lands under and by virtue of said will; or, perhaps, more specifically, did he take a fee simple title ?

Oliver Mead, the testator, died unmarried and childless. For some years prior to his death he had resided, and at the time of the execution of his said will he was residing, in the family of Oliver D. Mead. The family of Oliver D. lived on the said farm of the testator—he residing with them—and had the charge and management of it, and so continued to do up to the time of the testator's death. By the seventeenth paragraph of his will the testator gave to Oliver D. Mead " all my real estate wheresoever situate, including my burial plot, all my stock and farming utensils on said real estate, all my household furniture of every description, and all my wearing apparel." In the eighteenth paragraph he made this Oliver D.

one of the three residuary legatees to whom he gave all the rest, residue and remainder of his estate, to share equally. And then in the nineteenth paragraph he exempts the estate he has given to Oliver D. from any contribution, in case there should not be enough of his other estate to pay all the legacies he had made, but provides that all the other bequests shall abate *pro rata*.

These parts of the will show a very marked general intent by the testator that Oliver D. Mead shall be a prominent beneficiary under his will. It is a well known rule in the construction of wills, that where the testator shows a particular and also a general intent, which are inconsistent with each other, the general intent will be established and the particular one disregarded, if the will can fairly be so read, considered as a whole. *Goodrich* v. *Lambert*, 10 Conn. *448, 452; *Pinney* v. *Newton*, 66 id. 141, 152.

The language in the seventeenth paragraph, in its first clause, creates in Oliver D. Mead an absolute estate in fee simple in the lands in question. This court in a very recent case, *Mansfield* v. *Shelton*, 67 Conn. 390, and after an examination of the prior cases, held that an express gift in fee simple will not be reduced to a life estate by mere implication from a subsequent gift over, but may be by subsequent language clearly indicating intent and equivalent to a positive provision. The words of the second clause of the seventeenth paragraph, which are supposed to have the effect of reducing the fee simple title created in Oliver D. to a lesser estate, are : " If the said Oliver D. Mead should die without leaving any heirs, then," etc. Read literally, these words mean nothing. No man can die without leaving any heirs. The law presumes, until the contrary is shown, that every deceased person leaves heirs. *Pitkin* v. *New York & N. E. R. Co.*, 64 Conn. 482, 487 ; *Budd* v. *Meriden Electric R. Co.*, 69 id. 272, 284.

It is argued that the word " heirs " in this clause ought to be read, or may be read, as meaning " children " or " heirs of his body." In a suitable case the court might possibly adopt such a reading. But in the present case, where the effect of

the changed reading would be to defeat the very clearly expressed general intent of the testator, as well as to reduce an express gift in fee simple to a lesser estate, the court would hardly feel authorized to do so. It would violate the rule just above stated. *Randfield* v. *Randfield*, 8 H. L. Cas. 225 ; 2 Jarman on Wills (5th Amer. ed.), 53. Words put into a will by construction, cannot be said to express the intention of the testator with as much certainty as the very words which he has himself used

There is another rule of construction which has been followed many times by this court, and which is decisive of this case. It is, that when in a will an estate in fee is followed by an apparently inconsistent limitation, the whole should be reconciled by reading the latter disposition as applying exclusively to the event of the prior devisee in fee dying in the lifetime of the testator. The intention of the testator being, it is considered, to provide a substituted devisee in case of a lapse. This construction gives effect to all the words of the will and makes all its parts consistent. *Lawlor* v. *Holohan*, 70 Conn. 87, and the cases cited.

The reference in the nineteenth clause to the estate " given to Oliver D. Mead," was evidently intended to cover whatever was disposed of by the seventeenth clause. Part of that —the personal estate—was unquestionably an absolute gift. It is therefore reasonable to suppose that as the testator in this reference made no discrimination, he had intended none, between the real and personal property, and understood that he had given an absolute estate in both.

It is also to be considered that if the provision for Oliver's death without leaving any heirs were read as one as to his death without leaving any surviving issue, whether it occurred either before or after that of the testator, then it contemplated a devise to such issue, which would be void under the former statute of perpetuities. *Leake* v. *Watson*, 60 Conn. 498. The construction which we adopt, on the other hand, by confining the effect of this clause to a death before that of the testator, makes this clause valid and satisfies the rule

that when a devise may fairly be read either as a legal or illegal one, the former meaning is preferred.

From all the words of the will examined in the light of the circumstances, we are persuaded that Oliver Mead intended by his will to give, and did give, to Oliver D. Mead an estate in fee simple in all his lands.

The Superior Court is advised to render judgment for the plaintiff.

In this opinion the other judges concurred.