THE HARTFORD TRUST COMPANY, ADMINISTRATOR, *vs.*
ALBERT J. PURDUE ET ALS.

First Judicial District, Hartford, March Term, 1911.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, JS.

It is a well-established rule in the construction of wills, that the word
"heirs" is to be given its strict, primary meaning—those entitled
by law to inherit by descent the real estate of a deceased person—
unless it clearly appears from the will itself, read in the light of the
circumstances surrounding the testator, that he used it in a differ-
ent sense; but, if that does clearly appear, the sense in which he
used the word must prevail.

A testator, in the eighth clause of his will, gave the life use of certain
personal property to his daughter, and provided that at her de-
cease the property should go to the issue of her body, if any, or,
if she died without issue, to her "heirs at law." By other provi-
sions of the will he gave $1,000 to the executor for the purchase
and erection of a monument, the material and design of which were
left to the executor's discretion, and gave all the rest of his prop-
erty either to his wife for life, with remainder to his daughter, or
to his daughter absolutely, and named the husband of the daughter
as executor. At the time his will was executed, the testator was
sixty-eight years old, his wife was fifty-eight, and his daughter
was twenty-three and in good health; he had a brother fifty-four
years old, and his wife had two sisters, both of advanced age; none
of the latter had any children with whom the testator was ac-
quainted, and there were no heirs at law expectant of the daughter
with whom the testator was acquainted. The testator died a
few days after executing the will. The daughter thereafter died,
leaving her husband surviving, but no issue, and, as her nearest
blood relatives, the uncle and the two aunts above mentioned. In
a suit to construe the will it was *held* that there was nothing in the
provisions of the will, read in the light of the circumstances sur-
rounding the testator, to indicate that the word "heirs" in the
eighth clause was not used in its primary sense, and therefore the
surviving husband took no share in the property included in that
clause.

Argued March 8th—decided April 21st, 1911.

SUIT to construe the will of Alexander S. Hopkins of
Hartford, deceased, brought to and reserved by the

Superior Court in Hartford County, *Burpee, J.,* upon an agreed statement of facts, for the advice of this court.

*Edward L. Steele,* for the plaintiff.

*E. Henry Hyde* and *William M. Maltbie,* for the defendants Samuel W. Hopkins, Elizabeth Reynolds, *et al.*

*Joseph P. Tuttle,* for the defendant Albert J. Purdue.

THAYER, J. The only question raised in this case is whether, under the last clause of the eighth paragraph of the will in question, Albert J. Purdue takes as "heir at law" of his wife, who was the testator's daughter mentioned in said paragraph, a share of the property named therein. The paragraph, omitting the designation of the property, which was all personal property, reads as follows: "Eighth. I give and bequeath to my said daughter, Annabelle Purdue, the use, interest and profits, during the term of her natural life, of all money of which I may die possessed . . . and after her decease I give and bequeath the same, to the issue of her body, if any, share and share alike, the children of deceased issue to take the parent's share. Provided my said daughter shall die without issue, I give and bequeath the money designated in this paragraph to the heirs at law of my said daughter." The daughter died without issue. The validity of the bequest to her heirs is unquestioned, the will having been executed subsequent to the repeal of the statute against perpetuities. The claimants of the money as her heirs at law are her husband; her uncle, brother of the testator; and two aunts, sisters of her mother.

The uncle and aunts were her nearest blood relatives at the date of her death. They are her heirs at law, taking the word "heirs" in its strict. primary meaning

—those entitled by law to inherit by descent the real estate of a deceased person. This is the meaning which is to be given to it in the construction and interpretation of wills, unless, when read in the light of the circumstances surrounding the testator, it clearly appears from the will itself that he used the words in a different sense. *Ruggles* v. *Randall*, 70 Conn. 44, 48, 38 Atl. 885; *Perry* v. *Bulkley*, 82 Conn. 158, 168, 72 Atl. 1014; *Dickerman* v. *Alling*, 83 Conn. 342, 345, 76 Atl. 362; *Nicoll* v. *Irby*, 83 Conn. 530, 534, 77 Atl. 957. This, in this State, is a well-established rule of construction, and it is equally well established that if it clearly appears from the context and circumstances that the testator used the word in a different sense the latter must prevail. *Wolfe* v. *Hatheway*, 81 Conn. 181, 185, 70 Atl. 645; *Nicoll* v. *Irby*, 83 Conn. 530, 77 Atl. 957. It is claimed in behalf of the husband that the will, read in connection with the circumstances surrounding the testator at the time he executed it, shows that he used the word "heirs," not in its primary, technical sense, but to indicate those who would take under the statute of distributions. Used in this sense, it is claimed that the husband, who under the statute of distributions would be entitled to one half of his wife's estate, is entitled under the will to one half of the fund in controversy.

The testator at the time the will was executed was sixty-eight years old; his wife, the mother of his daughter Annabelle, was fifty-eight, and the daughter was then twenty-three years of age and in good health. Of the present claimants the uncle was fifty-four years of age, and the two aunts were both of advanced years. Neither of the claimants had any children with whom the testator was acquainted, and there were then living no other first cousins or heirs at law expectant of said Annabelle with whom the testator was acquainted. The testator died a few days after executing the will.

By the will $1,000 is given to the executor, to be expended in the purchase and erection of a monument upon the testator's burial lot. The material and design of the monument are left to the discretion and taste of the executor. The son-in-law, Albert J. Purdue, is named as executor. Of his remaining property, except that mentioned in the eighth paragraph of the will, part is given to the testator's wife for life, with remainder to the daughter Annabelle, and the rest is given to the daughter absolutely. These facts appearing in the record are claimed to warrant the conclusion that the testator, in the contingency which has happened, intended to give, and by the language used did give, the remainder in the fund bequeathed in the eighth paragraph to those who should be the distributees of the daughter's estate under the statute of distributions.

It is said that the testator could not have meant by the use of the word "heirs" those only who would inherit real estate, because the disposition which he was making related solely to personal estate. The fact that the disposition in question is of personal property only is to be given due weight in determining with what meaning the testator used the word, but it is not conclusive. *Ruggles* v. *Randall*, 70 Conn. 44, 48, 38 Atl. 885.

The testator, as appears by the claimant's brief, left a considerable estate, in all of which, except that designated in paragraph eight, his daughter under the will took, immediately upon his death, a vested interest—a fee as to part of it, and a remainder expectant upon the death of her mother in the rest. She also became entitled to the use for life of that designated in paragraph eight. The remainder in this fund the testator undertook to dispose of himself. The daughter had full power of disposition during her life, or by will after death, of the rest of the estate, and if she did not dispose of it it would pass to those who would

take under the statute of distributions. It is to be presumed that the testator had some purpose in thus separating the fund in question and keeping the disposition of it from his daughter, in whom the will shows he had confidence, and in himself disposing of the remainder to others. The disposition of it to the daughter's issue, should there be any, was a gift to those who would be her heirs at law in the strict sense of the term. If these should fail, it is not unnatural that he should give it to others standing in that relation.

The fact that the testator was not acquainted with any cousins or expectant heirs at law of his daughter other than the uncle and aunts, affords no aid in determining the sense in which the testator used the word "heirs." If there were heirs expectant with whom he had no acquaintance, he might desire that, issue of his daughter failing, such expectant heirs should take the fund. The bequest to her issue, if any, was to those whose existence was contingent, and who might come into existence after his death. It is not uncommon for a testator to bequeath property to relatives or others with whom he has no acquaintance.

If we assume that the testator expected that his daughter, young and in good health, would outlive her mother and the uncle and aunts who now claim under the will, it does not follow that he would not desire that this fund should go to other relatives by blood of his daughter, rather than to the statutory distributees of her estate.

It would appear that the testator had confidence in and a friendly feeling for his daughter's husband from the fact that he made him his executor, entrusted him with the purchase and erection of an expensive monument, and left to his discretion and taste the material and design of the same. This fact would explain a bequest to the son-in-law, had one been made. But it

furnishes no sufficient ground for giving to language used by the testator a meaning different from the natural one. There was no attempt to make a special bequest to the son-in-law. It is perfectly clear that the testator did not intend that the fund in question should reach him as a distributee under the statute, if the daughter left issue or issue of such issue. In such case he and such issue would be statutory distributees of his wife's estate, but the issue were to receive the entire fund. No inference, therefore, as to the meaning with which the testator used the word "heirs" can be drawn from the fact that the parties held toward each other friendly and confidential relations.

It is said that as her issue would be the heirs at law of the daughter it would have been enough for the testator, had he intended that only heirs in the technical sense should take the fund, to have provided that upon her death the fund should go to her heirs at law; that in such case the issue, if any, would take, and, if none, the other heirs at law would take. This is true. The suggested language would have been more concise, but it would not have indicated more clearly that the heirs at law, rather than statutory heirs, were to take. It seems probable from the language of the paragraph that the last clause, which is a sentence by itself, was added after it had been suggested to the testator that intestacy as to this fund was possible, unless provision was made for its disposition in case the daughter should die without issue. However that may be, there is nothing in the language to indicate that the word "heirs" was not used in its primary sense. Our conclusion is that it was so used.

The Superior Court is advised that the claimant Albert J. Purdue is entitled to no share of the fund in controversy, and that it is to be divided equally between the other three claimants.

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.