### ALICE B. BEACH *vs.* THE MERIDEN TRUST AND SAFE DEPOSIT COMPANY.

*First Judicial District, Hartford, March Term, 1923.

WHEELER, C. J. BEACH, CURTIS, BURPEE and KEELER, JS.

. A testator gave the residue of his property in trust, directing the trustee, after the death of his wife, to pay to each of his five children and to his or her "heirs," one-fifth part of the income of his property, and upon the death of all the five children, "to pay over and deliver" to the "heirs" of each child, one-fifth part of the entire residue then in the hands of the trustee. After the death of the testator and his wife, one of his sons died in January, 1922, intestate and childless, but leaving his widow, the plaintiff. In a suit by her to determine her rights under the will, it was *held:*—

1. That the word "heirs" was not used in its ancient strict, technical sense, as limited to those who might become entitled by law to inherit by descent the testator's real estate, but was clearly intended to indicate those persons who would take the intestate estate of a deceased child under our statute of distributions.

2. That under the statute in effect when the plaintiff's husband died in 1922 (Public Acts of 1921, Chap. 221), the plaintiff was entitled to all his estate absolutely, and hence was his sole statutory and legal "heir"; and as such heir was entitled to receive one fifth of the

———————————————

* Transferred from third judicial district.

income of her father-in-law's estate during the continuance of the trust, and, upon its termination, to receive one fifth of the residue of the estate itself, such undivided fifth part having vested in her upon her husband's decease, subject to the possession of the property by the trustee during the continuance of the trust.

3. That the instruction to the trustee "to pay over and deliver" to the heirs of each child imported a gift to such heirs.

Argued March 7th—decided April 18th, 1923.

Suit to determine the rights of the plaintiff in and to a share of the estate of Henry B. Beach of Meriden, deceased, under the terms of his will, brought to and reserved by the Superior Court in New Haven County, *Webb, J.*, upon the facts alleged in the complaint, for the advice of this court. *Judgment advised for the plaintiff.*

Henry B. Beach died in 1908, leaving a widow and five children, and a will executed in 1904. His widow died in 1913. One of his children died in 1918, leaving a daughter who is still living. Another son, H. Burroughs Beach, died intestate in January, 1922, leaving no child nor parent, but a widow, the plaintiff, to whom he was married in 1891. The other three children of the testator are now living.

In the fourth clause of his will, Henry B. Beach gave all the residue of his estate to the defendant in trust, to pay not exceeding $600 a year of all income thereof to his widow, and to pay to each child and his heirs one-fifth part of the remainder of said income during his widow's life. This clause contained also these provisions: "d. Said trustee shall upon and after the death of my wife, Charlotte S. Beach, pay to each of the above named children and to the heirs of each child one equal and proportionate one-fifth share of the income of my said estate, provided that said trustee shall not pay any of the income mentioned in this and the preceding paragraph to any of my heirs who shall ap-

peal from the probate of this will, or who shall institute proceedings in law or equity to have the same set aside. e. Said trustee shall upon the death of all my above children, pay over and deliver to the heirs of each child, to each one-fifth part the entire residue of my estate then in the hands of said trustee, share and share alike."

During his life, the trustee paid to the testator's son, who was the husband of the plaintiff, one fifth of the income of the estate. After his death, the plaintiff, as his widow and sole heir, made claim on the trustee, the defendant, for the same share of the income as it had paid to her husband, and upon its refusal to recognize her claim, brought this action. The defendant demurred to the complaint, which set forth the foregoing facts, on the ground that the word "heirs," as used in the will, did not include or mean the plaintiff. The questions of law thus raised, which are reserved for the consideration and advice of the Supreme Court of Errors, are stated as follows: "(a.) Whether under the law of the State of Connecticut the plaintiff is the sole heir of her deceased husband, inasmuch as he left no children or representatives of children and no parent surviving. (b.) Whether within the meaning of the term 'heirs' as used in the will of the testator, the plaintiff is the sole heir of her deceased husband, inasmuch as he left no children or representatives of children and no parent surviving. (c.) Whether as such heir the plaintiff is entitled to receive the income which her deceased husband would have received had he been living and until the death of the last surviving of all five children of the testator, Henry B. Beach. (d.) Whether as such sole heir the plaintiff is now the owner of a vested remainder in fee in an undivided one-fifth of the principal of such trust estate, subject only to the retention of possession by

the trustee until the death of the last survivor of the five children."

*Charles Welles Gross,* for the plaintiff.

*George A. Clark,* for the defendant.

BURPEE, J.  The answers to the questions upon which the advice of this court is asked, depend upon the meaning which should be given to the word "heirs" used by the testator in his will.  Our decisions have recognized the fact that this word has been used by testators sometimes with one meaning and sometimes with another. In *Ruggles* v. *Randall,* 70 Conn. 44, 48, 38 Atl. 855, this court said: "The word 'heirs,' in its strict and primary meaning, signifies those entitled by law to inherit by descent the real estate of a deceased person.  It is also popularly used to denote those entitled by the statute of distributions to succeed beneficially to the personal estate of a deceased person."  In *Tingier* v. *Chamberlin,* 71 Conn. 466, 469, 42 Atl. 718, it was decided that a testatrix used the words "heirs at law" of her son, "not as meaning his children, but in their natural or proper sense, as including all those persons who shall be capable of inheriting from him or taking his property under the statute of distributions, if he died intestate."  In *Dickerman* v. *Alling,* 83 Conn. 342, 345, 76 Atl. 362, the testator directed that the remainder of his estate be distributed among his "legal heirs, and legal representatives according to the laws of distribution of the State."  We said that, without regard to the words "legal representatives," the testator's intention to make a division of his estate according to our statute of distributions, was too clear to be seriously questioned.  And we have declared: "In fact, the word 'heirs' has been so often used and construed as including

all who would inherit either real or personal estate, that there is no longer any good reason for insisting upon its technical significance, except where the intention to use it in that sense is apparent." *Morse* v. *Ward*, 92 Conn. 408, 411, 103 Atl. 119.

The will before us does not disclose an intention of the testator to use the word "heirs" in its technical significance. He gave all of his estate to the defendant to hold in trust until the death of all his five children. He directed his trustee to pay to each of the five children exactly one fifth of the income from his estate. There is no provision that the trustee in any event shall pay to any child any share of the income greater than one fifth. The death of one or more of his children was not to increase the share to be paid to any of the surviving children. There is no indication of a purpose to add, in any way or at any time, to the designated one-fifth share to be paid to each of the five named children. The testator plainly intended that the income be divided into as many equal shares as there were children at the time he made his will, and that it be so divided continuously until the death of all of his children. There is no suggestion that after the death of one child, one fourth of the income shall be paid to each remaining child. It is manifest that the trustee, being directed to pay to each named child and his heirs one fifth of the income and no more, is required to select, if possible, some person as the heir of a deceased child who is not one of the other children of the testator or one of the heirs of one of the other children. In no other way can the trustee continue the division of the income into five equal shares.

The testator's scheme to divide his property into as many parts as there were children at the time he made his will, is carried out to the end of its provisions. When the trust shall be terminated by the

death of all of his five children named, the trustee is directed to pay one-fifth part of the residue of the estate to the heirs of each child of the testator named in the will. Manifestly his controlling purpose was · to prevent any of these children from receiving any part of the principal of his estate. It is apparent that he anticipated that when the time for a final distribution of his estate should arrive, there would be a person or persons in existence who might inherit from each of his children one of the one-fifth parts. And it is equally evident he did not desire that the heirs of any child should receive more than the designated one fifth. When one of his children died without heirs who could inherit his real estate by descent, the wishes of the testator can be carried out only by construing the word "heirs," as he used it in his will, to mean a person who can inherit that child's part of his estate according to the law of distribution in this State. Since no man can have heirs until his death, the law in effect at the time of the death of that child in 1922, determines who his heirs are. That law is found in Chapter 221 of the Public Acts of 1921, and the applicable part is as follows: "On the death of a husband or wife married on or after April 20, 1877, . . . where there is no will, . . . if there are no children of the decedent or representatives of children, and no parent, the survivor shall take all of the estate of the decedent absolutely. . . ." This deceased child of the testator left no child nor representative of any child, nor any parent, but only a widow, the plaintiff, whom he married since 1877. Under the statute, she took all of his estate absolutely. She was his sole heir, by force of the statute. As statutory heir, she was also legal heir. In the will there appears no disposition of the testator to exclude the wife of his son from that classification, nor any purpose that none except blood relatives should share in his bounty.

This will contains no reference to the disposition of the income of the testator except the provision in subdivision (d) quoted above. In the following subdivision the trust is continued until the death of all of the testator's five children named. During the trust, the testator intended that the income should be paid as directed in subdivision (d): that is, to each of the five children during his life, and thereafter to the heirs of each. As the sole heir of one of these children, this plaintiff is entitled to his share of the income until the death of all of the testator's children.

The language of subdivision (e), that the trustee, upon the death of all the testator's five children named, shall "pay over and deliver to the heirs of each child, to each one-fifth part of the entire residue of my estate," imports a gift to the heirs of each child. *Angus* v. *Noble*, 73 Conn. 56, 64, 46 Atl. 278; *Johnson* v. *Webber*, 65 Conn. 501, 513, 33 Atl. 506. The heirs of each child are or will be the persons entitled at the time of his death to inherit his estate. At that time, an undivided one-fifth part of the residue of the testator's estate vested, or will vest, in fee in the person who was, or shall be at that time, the heir of any of his five children named. Each one-fifth undivided part then became, or will become, an estate alienable and transmissible by inheritance, although the vesting in enjoyment will be postponed until a future and uncertain time. *Allen* v. *Almy*, 87 Conn. 517, 523, 89 Atl. 205.

We advise the Superior Court that each of the questions of law reserved for the consideration of this court should be answered in the affirmative.

Costs in this court will be taxed in favor of the plaintiff.

In this opinion the other judges concurred.