THE HARTFORD-CONNECTICUT TRUST COMPANY, EXECUTOR AND TRUSTEE, *vs.* FLORENCE W. LAWRENCE ET AL.

First Judicial District, Hartford, January Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and JENNINGS, Js.

The dominant rule for the construction of the terms of a will is that, if possible, the intent of the testator shall be made effectual.

The presumption that the word "heirs" means those entitled to inherit real estate is a survival from the law of feudal England which accounted the descent of real property of prime importance and attributed little consequence to the transmission of personalty. Since this reason for the rule has never existed in this State and since, to the popular mind, the conception of inheritance embraces both real and personal estate without discrimination, the intent of a testator would under present conditions be defeated more often than otherwise, by adhering to the ancient, technical meaning of the word.

When the statute of 1877 radically altered the legal relations of persons thereafter married, and gave to each a real inheritable interest in the other's estate arising by virtue of succession at death, and not, like the earlier rights of dower and curtesy, having its origin in the pre-existing marital status, a surviving husband or wife became in a true sense the "heir" of the deceased spouse, even within the primary and technical meaning of the term.

In the present case, the testatrix, who was married but childless, bequeathed $1,000 to each of two married nieces who were her only next of kin, with the provision that "if either should die before me, the heirs of my niece so dying shall receive the share to which such niece would be entitled." She also provided that, after the death of her husband, a substantial portion of the residue, of which he had the life use, should be divided equally between these nieces, "the heirs of either who may have died to receive the share to which such deceased beneficiary would have been entitled if living." One of the nieces died in 1918 shortly after the will was executed, leaving a husband but no children. The testatrix herself died in 1925 and her husband in 1926. *Held (one judge dissenting)*:

1. That the husband of the deceased niece was her "heir" and was entitled to the share of the estate which she would have taken had she survived the testatrix.

2. That this construction of the term accorded with the actual intent of the testatrix as disclosed by the surrounding circumstances including (a) her obvious plan of dividing her estate into equal parts and establishing two separate lines of future descent, (b) her failure to include a provision for survivorship in the event of the death of either niece, (c) the fact that she made no change in her will during the seven years intervening between the niece's death and her own, (d) the presumption that she knew the distribution which the law would make of the share of a deceased niece, and (e) the absence of any indication that she desired her estate to remain with the heirs of her own blood.

3. That, since there was no language requiring a different interpre-

tation, the will must be read as of the date of the testatrix's death and the heirs of the deceased niece determined as of that time.

Argued January 6th—decided June 6th, 1927.

Suit to determine the construction of the will of Adelaide S. Farrington, late of Windsor Locks, brought to the Superior Court in Hartford County and reserved by that court (*Nickerson, J.*), upon an agreed statement of facts, for the advice of this court.

*Howard W. Alcorn,* for the defendant Florence W. Lawrence.

*Albert C. Bill,* with whom, on the brief, were *Albert S. Bill* and *Cornelius A. Parker,* for the defendant Marcus Chase.

Haines, J. On March 18th, 1918, Adelaide S. Farrington made and executed her will disposing of both real and personal property, naming the plaintiff as sole executor and trustee thereunder, with "full power and authority . . . to sell and convey any real estate which may form a portion of my estate or of the trust fund, if such sale should be deemed to be for the best interests of the beneficiaries." The death of the testatrix occurred July 9th, 1925, and the plaintiff duly qualified and proceeded with the settlement of the estate. After the payment of all lawful claims there remains in the hands of the executor sufficient to pay all the legacies provided by the will leaving a considerable residuary estate. The testatrix was survived by her husband, Martin L. Farrington, who died January 29th, 1926. She had two nieces, Mrs. Grace A. Chase and Mrs. Florence W. Lawrence. The latter survives, but the former died October 5th, 1918, leaving her husband. She left no parents and no children or

representatives of children, and her only surviving next of kin is her sister Mrs. Lawrence.

By the third paragraph of her will, the testatrix gave Mrs. Chase and Mrs. Lawrence $1,000 each, and added: "If either should die before me, the heirs of my niece so dying shall receive the share to which such niece would be entitled if living."

In the fourth paragraph the testatrix provided that the residue of her estate should be held by her executor in trust, with power to manage and invest it under the laws of this State, and directed that the net income thereof be paid over to her husband during his life. She then directed that upon the death of her husband sundry sums be paid from the fund to designated beneficiaries, and that the remainder "shall be equally divided between Mrs. Grace A. Chase aforesaid and Mrs. Florence W. Lawrence aforesaid, to be theirs absolutely, and the heirs of either who may have died to receive the share to which such deceased beneficiary would have been entitled if living."

Upon the foregoing facts, the controlling question presented to this court for determination is, whether the word "heirs," as used in the third and fourth paragraphs of the will, includes Mr. Chase. Counsel for the husband claim that the word should not be interpreted in its technical sense of one entitled to inherit the real estate of a deceased person, unless the intent of the testatrix be found to so limit it, while counsel for the niece say it must be so interpreted unless the contrary intent appears. We have held, in effect, that the technical meaning will be given to the word if the intent of the testator to use it in a different sense does not appear; but it is a controlling and equally sound rule of construction, that where the intent can be found from the context and the circumstances that intent shall govern. In other words, the dominant rule in

the construction of this term, like all other terms of a will, is that the intent of the testator shall be made effectual if possible. *Hartford Trust Co.* v. *Purdue,* 84 Conn. 256, 258, 79 Atl. 581; *Ruggles* v. *Randall,* 70 Conn. 44, 48, 38 Atl. 885; *Nicoll* v. *Irby,* 83 Conn. 530, 534, 77 Atl. 957; *Leake* v. *Watson,* 60 Conn. 498, 508, 21 Atl. 1075. The original and underlying reason for presuming that the word "heirs" referred to those who would inherit real estate was that that was the historical significance of the word and it was more probable than otherwise that the testator understood it to have that meaning. Under the feudal conceptions of the early English law, the descent of real estate was of primary importance, while the descent of personal property was of little consequence. Not only as a word of art, but in common parlance, the word "heirs" thus signified those who inherited real estate. While the rule came to us from this source, the reason for it has never existed to any extent in this country. In the absence here of the historical feudal background, the sanction for the technical definition of the word seems to be largely lacking. On the contrary, our conception of property has never given predominant importance to real estate. The popular conception of inheritance in this country includes personal as well as real property; the historical distinction between the two has disappeared and today personal property is of equal importance with real estate as the subject of inheritance. Indeed, we cannot reasonably assume that a testator today, in the use of the word "heirs," intends to suggest only one who inherits real estate, but rather one who inherits property generally. As a matter of fact, there are probably few testators who ever heard of the historical meaning of the word. It has acquired a broader meaning and is defined in dictionaries as those who inherit property

generally. Its original or historical meaning is given secondary place only and may fairly be said not to exist at all in the popular mind. Since the intent of the testator is always the controlling purpose of the construction of wills, this modern conception of the word in the popular mind cannot rightly be ignored. Usage makes language, and the historical significance of this word being largely lost, the intent of those who make wills will obviously best be found by giving it the popular and generally understood meaning. To adhere to the historical meaning under such circumstances would more often than otherwise defeat the real intent of the testator. The will before us illustrates the force of these observations. Four gifts of corporate stock are made to named beneficiaries, and in each case the testatrix uses the phrase "to be hers and her heirs forever."

A surviving husband or wife could not fairly be said to be an "heir," when the word was restricted to those who inherit real estate and when the only rights they had by our law were estate for life, by curtesy or dower, having their origin not in succession at death, but in the pre-existing marital status. In Connecticut since 1699, surviving wives have taken a share in a husband's property by virtue of the law for the distribution of intestate estates. 4 Colonial Records, 306. In 1877, dower and curtesy rights, as regards any marriage thereafter contracted, were abolished and a surviving spouse was put on the same plane in the right to inherit, and in the event of intestacy took a certain share by absolute title. Public Acts of 1877, Chap. 114. We pointed out in *Mathewson* v. *Mathewson,* 79 Conn. 23, 63 Atl. 285, that a radical change of policy was adopted by this Act and that all existing statutes giving to either husband or wife any right to or interest in the property of the other either during

marriage or after death—other than those under the new *status*—were repealed. In *Beard's Appeal,* 78 Conn. 481, 484, 62 Atl. 704, we pointed out that as to any share in the husband's estate the wife might have beyond that secured to her against any testamentary disposition he might attempt, she stood on the same footing as any other distributee. In *Harris* v. *Spencer,* 71 Conn. 233, 237, 41 Atl. 773, we showed that either husband or wife may, during life, dispose of his or her property in any lawful way he or she pleases. It thus appears from these decisions that the title of a surviving spouse married after 1877 is one derived at death and by virtue of succession, the same process through which any person acquires title by distribution from the estate of a deceased person. Indeed, the statutes provide that the share of the surviving spouse shall be set out before that of those who are to share the remainder, and this share includes both real and personal property. The surviving spouse thus "inherits by descent the real estate of the deceased," and is, since 1877, in fact an "heir" and within the primary as well as the popular meaning of the word "heir."

While we made reference in *Ruggles* v. *Randall* and *Hartford Trust Co.* v. *Purdue, supra,* to the historical meaning of the word, and excluded a surviving wife in one case and a surviving husband in the other, it will be seen that they were decided upon the particular facts of those cases. We recognized the same considerations in *Morse* v. *Ward,* 92 Conn. 408, 411, 103 Atl. 119, and in *Beach* v. *Meriden Trust & Safe Deposit Co.,* 98 Conn. 821, 824, 120 Atl. 607. In the latter we said: " 'In fact, the word "heirs" has been so often used and construed as including all who would inherit either real or personal estate, that there is no longer any good reason for insisting upon its technical

significance, except where the intention to use it in that sense is apparent.'" See also *Lavery* v. *Egan,* 143 Mass. 389, 391, 9 N. E. 747; *Weston* v. *Weston,* 38 Ohio St. 473, 478; *Turner* v. *Burr,* 141 Mich. 106, 111, 104 N. W. 379; *Anderson* v. *Groesbeck,* 26 Colo. 3, 13, 55 Pac. 1056. It follows that even if we were to give the word "heirs" only its primary meaning, it would include Mr. Chase; but we should go further and examine the circumstances surrounding the testatrix when she made this will, and which were known to her at the time, and which she is presumed to have had in mind when the will was drawn. Her husband was living and she had no parents or children or descendants of children. The husband, and her two nieces, Mrs. Chase and Mrs. Lawrence, were obviously the persons to whom her chief thought was directed. She gave the husband the life use of the entire estate, and then provided that upon his death certain specific gifts be made to others, and the remainder of the fund *"equally divided"* between Mrs. Chase and Mrs. Lawrence, "to be theirs absolutely." Had Mrs. Chase survived the testatrix, this remainder would have been divided into two equal parts, each niece taking an absolute title, and two lines of future descent of the estate would have thereby been established. That this was clearly her intent does not, we think, admit of reasonable doubt. We do not think the provision for these two nieces necessarily suggests a wish to keep the property to blood relatives as distinguished from others. There were no opposing claims of kinship either by blood or affinity. These two nieces were the only kin the testatrix had. When she made her will in March, 1918, Mr. and Mrs. Chase had been married about eighteen years and were childless. Some months after the will was made, Mrs. Chase died childless, and her husband still survives. It is significant

that for seven years thereafter to her death in 1925, the testatrix made no change in the provision for Mrs. Chase and her heirs, and it still stands as originally written. Had she desired after the death of Mrs. Chase, that her remainder estate should not be ultimately divided into two equal parts, but should remain undivided and go to the surviving niece and ultimately to the "heirs" of that niece only, it is only reasonable to believe she would have said so, either by providing that the share of the deceased should go to the survivor, or by other appropriate language. There is nothing to be found in the will indicating an intent to give either niece, in any contingency, more than one half the remainder, quite the contrary. In this respect the case has much analogy to that of *Beach* v. *Meriden Trust & Safe Deposit Co.*, 98 Conn. 821, 825, 120 Atl. 607. It was natural for the testatrix to believe that each niece would have legal heirs in the event of death, and we may fairly assume that she knew the statute laws of the State when she made this provision and during the seven years following the death of Mrs. Chase, and that her plan for the division of the remainder into two parts would be carried out. As counsel for Mrs. Lawrence say in their brief, "the will of the testatrix indicates a knowledge of the law applicable to wills." We may presume that she knew in 1918, that the surviving husband of Mrs. Chase would be given preference over sisters, by the laws of this State, and would be entitled upon the death of the latter in 1918 to a share, or after 1921, to all, the property of the deceased. She clearly contemplated, when the will was drawn, that the nieces would be equal recipients of her bounty, and we feel sure she understood and intended that the word "heirs" which she used, would carry the property of either niece who predeceased her to those whom the statute

law of this State designated as her heirs. This is a common and natural view of the meaning of the word and one which every married person with property today understands. Not only is a contrary intent not shown, but the language used and the purpose indicated point to this as the interpretation necessary to carry out her *actual* intent. "It frequently happens that legatees die during the lifetime of the testator. The testatrix could have provided for such a contingency by giving it to the survivors, or to other parties. She did neither. There is therefore some presumption that she intended that the law should settle the matter. That presumption is strengthened by the facts that she had an opportunity to change her will after one or more of the legatees had died, and failed to do so." *Bill* v. *Payne*, 62 Conn. 140, 142, 25 Atl. 354.

As to the meaning of the word "heirs" in the present case, the claim is made in behalf of Mrs. Lawrence, that the cases of *Ruggles* v. *Randall*, 70 Conn. 44, 38 Atl. 885, and *Hartford Trust Co.* v. *Purdue*, 84 Conn. 256, 79 Atl. 581, "are decisive of the principal case"; but it appears upon an examination of those cases that the result was reached by the same means we have adopted here. The opinions show a careful examination and consideration of the surrounding facts, and from that the court reaches its conclusion as to the sense in which the testator used the word "heirs." We find vital differences in comparing those facts with the ones before us. As stated elsewhere in the same brief, "precedents are not of controlling force, unless they are strictly analogous."

Cases are numerous where the statutory interpretation has been put upon the word "heirs." *Morse* v. *Ward*, 92 Conn. 408, 410, 103 Atl. 119; *Tingier* v. *Chamberlin*, 71 Conn. 466, 469, 42 Atl. 718; *Dickerman* v. *Alling*, 83 Conn. 342, 345, 76 Atl. 362. In

*Lavery* v. *Egan,* 143 Mass. 389, 9 N. E. 747, the court, speaking of intestate estate, said (p. 392): "An heir . . . is he upon whom the law casts an estate of inheritance immediately on the death of the owner." In that case it was held that a husband or wife, under the statute of distributions, took precisely as an heir takes and were to be considered as statutory heirs, and this was followed in *Lincoln* v. *Perry,* 149 Mass. 368, 374, 21 N. E. 671. In behalf of Mrs. Lawrence it is contended that in dividing the estate between her and her sister, Mrs. Chase, the testatrix evinced an intent that the property should go to the heirs of the blood and the will should therefore be construed to exclude Mr. Chase. These two nieces were the only next of kin the testatrix had. They were the natural objects of her bounty, and giving the property to them does not necessarily suggest that she wished to limit her bounty to the blood. On the contrary, if she had wished to keep the property with heirs of the blood, we would look for that intent in some provision by which the survivor should take in default of issue, but the will makes no provision for survivorship or issue. Obviously Mrs. Farrington was content, upon the death of either niece without issue, that the share of that niece should go, not to her own heirs, but to the heirs of the niece, and she of course realized it was impossible for her to know at the time she made her will, who those heirs would be. In *Gray* v. *Whittemore,* 192 Mass. 367, 78 N. E. 422, the court upon similar reasoning said, at page 383: "We cannot override his plain words upon the strength of an imagined general intent which he has neither expressed nor manifestly implied, and which would be at variance with the language which he has used," and decided that surviving husbands were "heirs" of their deceased wives. And in similar circumstances in *Sher-*

*burne* v. *Howland,* 239 Mass. 439, 442, 132 N. E. 188, the court said what is true in the instant case: "There is not any predominating and pervading purpose apparent from the words of the will that none save blood relatives should share in his bounty, or that husbands and wives should be shut out provided they come within the sweep of the general classification 'legal heirs.' " It is urged in behalf of Mrs. Lawrence, that the will requires us to determine the heirs of Mrs. Chase at the time of her death in 1918. The general rule is that a will speaks from the death of the testator. "The will, like every other, is to be read as if executed at the moment of the testator's death. Whoever were, at that time, her [the beneficiary's] heirs, in the sense in which he employed that word, are to take, without regard to whether they did or did not answer that description at her decease." *Ruggles* v. *Randall,* 70 Conn. 44, 48, 38 Atl. 885. Sometimes, however, the language may be such that rights under it must be determined as of some other time. So if the word "now living" be used, they must refer to the time of making the will. *Gold* v. *Judson,* 21 Conn. 616, 622. Examining the will before us, we find in the third paragraph, giving $1,000 each to these nieces, the testatrix says: "The same to be payable at my death and to be their and their heirs forever. If either should die before me, the heirs of my niece so dying shall receive the share to which such niece would be entitled if living"; and in paragraph four (f) she says: "The remainder of the trust fund shall be equally divided between Mrs. Grace A. Chase aforesaid, and Mrs. Florence W. Lawrence aforesaid, to be theirs absolutely, the heirs of either who may have died to receive the share to which such deceased beneficiary would have been entitled if living." None of this speaks as of the death of Mrs. Chase. In the third paragraph she refers spe-

cifically to her own death. It is all prospective, looking to a future date, and that date is the date of the death of the testatrix. The construction contended for would require us to read into the language used a designation of the heirs as those who were such at the time of the death of the beneficiary. We can see no warrant for taking that liberty with the language of the testatrix. These provisions clearly indicate that upon the death of the testatrix, if it were found that one of the nieces had died, it was to vest in the *then living* heirs of that niece. We see nothing which permits us to vary the general rule of construction. So, the result would be the same if the date to determine the heirs were held to be that of the death of the life tenant as we find the intent to be in circumstances disclosed in *Beach* v. *Meriden Trust & Safe Deposit Co.*, 98 Conn., 821, 826, 120 Atl. 607. In the instant case, the life tenant, Mr. Farrington, died in 1926. On the other hand, if as claimed by counsel for Mrs. Lawrence, the heirs were to be determined at the death of Mrs. Chase, Mr. Chase was even then a statutory heir. Though his *status* as such would have been fixed at that time, the *extent* of his right to take would be determined by the law of 1921 in force at the time the estate vested, and no redefinition of the class would have been necessary. His right to the whole fund would have remained the same.

In answer to the first question propounded to us: Marcus Chase is the sole heir of Grace A. Chase under the provisions of the Third Article of the will of Adelaide S. Farrington; and in answer to the second question: Marcus Chase is the owner of the vested remainder under the provisions of Article Fourth (f) of the will of Adelaide S. Farrington.

In this opinion MALTBIE, HINMAN and JENNINGS, Js., concurred.

WHEELER, C. J. (dissenting). Counsel for Mrs. Lawrence claim that "heirs" in Articles Third and Fourth should be interpreted in its primary sense—that is, one entitled to inherit real estate of a deceased person—unless the intent of the testatrix as manifested in the will be not to so limit it, while counsel for Mr. Chase reach the contrary conclusion, that "heirs" should not be interpreted in its primary sense unless the intention of the testatrix as manifested in the will be to so limit it, but should be interpreted to mean those who take under the statute of distribution. The weight of authority in this State supports the construction that "heirs" is to be given its primary meaning unless a contrary intention is manifested in the will when read in the light of the surrounding circumstances. CHIEF JUSTICE TORRANCE says, in *Gerard* v. *Ives,* 78 Conn. 485, 489, 62, Atl. 607: "In its primary and technical meaning in our law, the word 'heirs' is used to express the relation of persons to some deceased ancestor; and when it is used in a will, as here, to point out legatees or devisees, its primary legal meaning should be given to it unless it is clearly shown by legitimate evidence that the testator used it in a different sense. This is the settled rule of construction in this State." See also *Hartford Trust Co.* v. *Purdue,* 84 Conn. 256, 258, 79 Atl. 581; *Ruggles* v. *Randall,* 70 Conn. 44, 48, 38 Atl. 885; *Nicoll* v. *Irby,* 83 Conn. 530, 534, 77 Atl. 957; *Leake* v. *Watson,* 60 Conn. 498, 508, 21 Atl. 1075; *Allen* v. *Almy,* 87 Conn. 517, 522, 89 Atl. 205; *Harris* v. *Weed,* 89 Conn. 214, 219, 93 Atl. 232. Our rule is unvarying that wherever the will of the testator makes manifest his intention in the use of "heirs" to be those who would take under the statute of distribution, such interpretation will in each case be given so as to effectuate the intention of the testator. *Beardsley* v. *Johnson,* 105 Conn. 98, 100, 134 Atl. 530;

*Beach* v. *Meriden Trust & Safe Deposit Co.,* 98 Conn. 821, 120 Atl. 607; *Harris* v. *Weed,* 89 Conn. 214, 219, 93 Atl. 232; *Allen* v. *Almy,* 87 Conn. 517, 522, 89 Atl. 205; *Hartford Trust Co.* v. *Purdue,* 84 Conn. 256, 79 Atl. 581; *Nicoll* v. *Irby,* 83 Conn. 530, 534, 77 Atl. 958; *Gerard* v. *Ives,* 78 Conn. 485, 62 Atl. 607; *Tingier* v. *Chamberlin,* 71 Conn. 466, 469, 42 Atl. 718; *Ruggles* v. *Randall,* 70 Conn. 44, 38 Atl. 885; *Leake* v. *Watson,* 60 Conn. 498, 506, 21 Atl. 1075.

Unless we can find within this will, read in the light of its surrounding circumstances, an intention on the part of the testatrix that by the use of "heirs" she meant those who would take under the statute of distribution, we should advise that the testatrix used "heirs" in its primary sense and therefore Mrs. Lawrence and not Mr. Chase is the sole heir of Mrs. Chase. There is nothing in the will nor in the facts stipulated to indicate that the testatrix intended to use the term "heirs" in any other than its primary sense. It follows that "heirs" as here used must be taken in its primary sense, since the will does not evince a contrary intention. The majority opinion states: "We have held, in effect, that the technical [primary] meaning will be given to the word if the intent of the testator to use it in a different sense does not appear." While the subsequent discussion does not specifically overrule this rule of our law, in effect it does, and as I understand it, holds that "heirs" when used in a will should be interpreted to mean those who take under the statute of distribution.

Let us assume that the majority opinion has changed our rule of law and that unless the will evinces a contrary intention, "heirs" when found in a will means those who take in the manner and share provided under the statute of distribution, and let us see where the law and the facts of this case take us. Mr. and Mrs. Chase

having married after April 20th, 1877, the survivor, under General Statutes, § 5055, except in the cases mentioned in the proviso to this section, was entitled, in the event that the deceased spouse died testate, to the use for life of one third in value of all the real or personal property owned by the deceased spouse at his or her death, "but where there is no will, the survivor shall take such third absolutely, and if there are no children of the decedent or representatives of children, the survivor shall take all of the estate of the decedent absolutely to the extent of two thousand dollars, and one half absolutely of the remainder of said estate. . . . where the wife by will has devised or bequeathed a portion of her property to her surviving husband, such provision shall be taken to be in lieu of the share herein provided for, unless the contrary shall be expressly stated in the will, or shall clearly appear therein; but in any such case the party shall have his or her election whether to accept the provision of such will or take such statutory share, and such election shall be made in writing signed by the party entitled to make the same, and lodged with the court of probate," etc. There is no finding that Mrs. Chase died intestate. There is no finding that she died testate; nor is there a finding as to whether she bequeathed a portion of her property to Mr. Chase, nor, if she did, as to whether he made his election whether to accept the provision of the will or take the statutory share. It follows that Mr. Chase was not, upon the facts reserved, in the event that Mrs. Chase died testate, entitled to an aliquot part of the whole or a part of Mrs. Farrington's estate under the provisions of General Statutes, § 5055. That he was entitled, if Mrs. Chase died testate, in any event, to the life use of one third of her estate during his life, did not make him her heir. "But where by statute the husband or

wife takes an absolute interest in the estate of the deceased consort, they come within the technical definition of 'heirs,' and if such was the manifest intention of the testator, such term will include a widower, or widow, as the case may be." 40 Cyc. 1463; 2 Alexander's Commentaries on Wills, § 852. An heir is one upon whom the law casts an estate of inheritance immediately upon the death of the testator. *Brumley* v. *Brumley,* 28 Ky. Law Rep. 231, 89 S. W. 182, 183; *Korn* v. *Cutler,* 26 Conn. 4, 6; *Evans's Appeal,* 51 Conn. 435, 437. Ordinarily the word "heirs" in a will is a word of limitation and conveys the idea of a fee-simple estate. If Mrs. Chase died intestate Mr. Chase, under the statute of 1918, would take, as there were no children or representatives of children, $2,000, and one half absolutely of the remainder of his wife's estate. Under the 1918 statute Mr. Chase, if Mrs. Chase had died testate and was, as my associates contend, an heir, could at the most only receive the life use of one third of the estate bequeathed and devised to her, and if Mrs. Chase died intestate, they having no children or the representatives of children, he could only receive $2,000 and one half of the estate absolutely. It is obvious that he could not secure, whether Mrs. Chase died testate or intestate, the share of her estate which my associates determine belongs to him under the 1918 statute. My associates do not controvert this, but hold that the statute in existence at the decease of Mrs. Chase does not determine the share which her husband would take if she died intestate, but that the statute in existence at the date of Mrs. Farrington's death would govern, under which Mr. Chase took the whole of the estate of his wife. The amendment of 1921 added these words, at line thirteen of General Statutes, § 5055: "and if there are no children of the decedent or representatives, . . . and no parent, the survivor

shall take all of the estate . . . absolutely." Public Acts of 1921, Chap. 221. The amended statute of 1921 could in no event be applicable unless Mrs. Chase died intestate. This is a fact which my associates assume is in the stipulated reservation, but which I have not been able to find in the record. Had the fact of intestacy been found, the amended statute of 1921 could not within our rule be held to be retroactive and apply to the situation created upon the death of Mrs. Chase in 1918. The presumption is that this statute was intended to operate prospectively. "They [statutes] should never be construed as having a retrospective effect," says JUSTICE PRENTICE, "unless their terms show clearly and unmistakably a legislative intention that they should so operate." *Humphrey* v. *Gerard,* 83 Conn. 346, 352, 77 Atl. 65; *Connecticut Light & Power Co.* v. *Oxford,* 101 Conn. 383, 126 Atl. 1; *Hartford* v. *Poindexter,* 84 Conn. 121, 79 Atl. 79. There is nothing in the language of this amendment or in that of its title which tends to indicate the legislative intention to make the statute operate retrospectively. The conclusion of my associates that this statute operates retrospectively could be reached only by disregarding the rule of universal statutory construction which we quote.

There is another reason which seems conclusive why this statute could not be held to be retrospective. My associates hold that Mr. Chase's rights as the heir of his wife came into existence upon the decease of Mrs. Farrington and not at the decease of Mrs. Chase. They reach this conclusion in dependence upon the rule of law that the will is to be read as if executed at the moment of the testator's death. That is the rule to apply were we considering the effect or operation of the will of Mrs. Farrington. Our present purpose is to search for her intention. That is not to be found as of

the date of her death in 1925, but at the date of execution of her will. The construction of a will must necessarily be made as of that time and in the light of the circumstances surrounding its making. Her heirs are those in existence when she died. Under this will they took the interest given them by the will. We find the testatrix, in Article Third, specifically refers to the time of the death of either niece as prior to her own death. The residuary clause in Article Fourth does not specifically refer to either niece predeceasing the testatrix, yet when the two articles are construed together there can be no doubt that in both the testatrix was referring to the legatee or legatees in each, predeceasing her. The bequest or devise to the heirs in each instance was a substitutionary one. Every such bequest or devise takes effect upon the death of the prior taker. Schouler on Wills, Vol. 2, 6th Ed. § 1040, says: "Wherever there is a bequest, whether immediate or deferred, to individuals, it is a rule that, be the legacy immediate or by way of remainder, a gift over of the legacy or share of a legatee dying under specified circumstances, shall take effect if the event happens in the testator's lifetime. Thus, if the bequest is to A, but if he die under twenty-one, to B, and A dies, in fact, before the testator, the gift to B takes effect. . . . For the argument that there can be no legacy to any one until the will speaks, and consequently no substitution, cannot here avail." There are, as Schouler points out, exceptions to this rule, but the case before us does not come within them. Alexander's Commentaries on Wills, Vol. 2, § 582, states the rule to be: "In a gift to heirs by way of *substitution,* the persons are ascertained at the death of him whose heirs they are, and not at the time of distribution." Gifts over upon the death of a beneficiary which are immediate gifts, such as those in articles

Third and Fourth, take effect before the death of the testator. *Walsh* v. *McCutcheon,* 71 Conn. 283, 41 Atl. 813. We said in *Webb* v. *Lines,* 57 Conn. 154, 17 Atl. 90: "Whenever as here the devise of a fee in terms is followed by a provision for a devise over in case of the death of the first devisee, this last expression is held not to refer to death under all circumstances, and therefore not to be restrictive of the prior devise to a life interest, but to death under one circumstance, namely, death before that of a testator, and therefore to be a devise over in substitution only upon the happening of that event; and when the event and substitution become impossible the interest of the first devisee becomes absolute." The rule that in the case of a devise or bequest to A in fee and if he die without issue it shall go to B, refers to the death of A prior to the testator's death; it has no application where the prior estate is one for life in A, with remainder to B. *Hollister* v. *Butterworth,* 71 Conn. 57, 40 Atl. 1044. The bequest in Article Third and the bequests and devises in Article Fourth (f) were substitutionary gifts and took effect in the heirs upon the death of Mrs. Chase and they were determinable as of that time and not at the death of the testatrix. The heirs of Mrs. Chase were those in existence when she died, for not until then could her heirs be known. Unless the will manifests the testatrix's intention that her heirs are to be determined as of a later date, they must be determined at the testatrix's death. My associates rely upon *Ruggles* v. *Randall, supra,* at page 48, in support of the position that "heirs" is to be construed as of the testator's death. This fails to note that we were then speaking of a direct bequest, not a substitutionary one. The bequest to Minerva Ennis was not a substitutionary one, but one "to the heirs of my niece," etc. The bequest to "Amanda Jewett

. . . and [in] case of her death before me to her heirs,"
was a substitutionary bequest. The principle was ap-
plicable to the Minerva Ennis bequest; it would not
have been applicable to the Amanda Jewett bequest,
since it was a substitutionary bequest. *Gold* v. *Judson,*
21 Conn. 616, construes a direct bequest, not a sub-
stitutionary one. The distinction we point out is a
settled principle of testamentary law. If Mrs. Chase
had died intestate, Mr. Chase might have been held to
be the heir of Mrs. Chase, provided the will disclosed
the intention of the testatrix to be that by "heirs" she
meant those coming within the statute of distribution,
in which event the share of the estate which he would
have taken would have been that given by the statute
of 1918, and not that given by the amendment of 1921,
which could not have a retroactive effect. When the
facts surrounding this testatrix at the time she executed
this will are analyzed, they reveal the intention of
Mrs. Farrington so clearly that it would not have been
changed if the fact had been found that Mrs. Chase
died intestate and as a consequence Mr. Chase been
entitled to a distributive share of her estate under the
statute existing in 1918, when Mrs. Chase died. There
is not the slightest indication in her will that Mrs.
Farrington intended that Mr. Chase should be one of
her heirs. He was not a beneficiary by name. There is
no finding that he was on terms of affection or even
friendship with the testatrix, nor is there a finding
of any business relation between him and the testatrix,
or any service of any kind which he had rendered her.
Her will discloses the objects of her bounty. Her own
husband and her two nieces who were her next of kin,
were her chief thought as she came to make her will.
First she bequeathed $1,000 to each of her two nieces,
Mrs. Chase and Mrs. Lawrence. Then she placed all
the remainder of her property in trust with direction

to the trustee to pay the net income thereof to her husband during his life. Upon his death she provided that a few specific legacies of no considerable value should be paid, and then the remainder of the trust fund should be equally divided between her two nieces who were her next of kin, and if either niece predeceased her, the share "to which such deceased beneficiary would have been entitled if living" should go to the heirs of the deceased beneficiary. None of her property was bequeathed or devised to her husband. Practically all of it went to the two nieces; if they survived the testatrix they would come into its absolute ownership; if either predeceased her the heirs of the deceased beneficiary would take her share. Her purpose was to give her property to her nieces, her blood relatives. The entire scheme of this simple will evidences an intention on the part of the testatrix to have her property go to her blood relatives. There was no one else in whom she manifested any interest except the few legatees of small legacies. Mrs. Farrington knew that Mr. and Mrs. Chase had been long married and were childless. She knew that Mrs. Lawrence had three children. These she might reasonably have anticipated were to be her only blood relatives in the event that Mrs. Chase died childless. Reading this will in the light of these circumstances, whom did the testatrix intend by the "heirs" of her niece? Whom would she, possessing the feelings of affection for blood relatives of the average person, prefer? The husband of Mrs. Chase, a nephew by marriage, with whom, so far as appears, she was upon no especial terms of affection and under no bond of gratitude for services performed in her behalf, or the three children of this loved niece, Mrs. Lawrence? Where would the ordinary testatrix wish her property to go? To those of her own blood is the inevitable answer. In construing

wills we have held the kindred by blood are to be favored over kindred by affinity when there is, as in the present case, nothing to show a contrary intention on the part of the testatrix. *Butler* v. *Flint,* 91 Conn. 630, 101 Atl. 19; *Tingier* v. *Woodruff,* 84 Conn. 684, 81 Atl. 967. If Mr. Chase had been by statute made an heir of Mrs. Chase at the time Mrs. Farrington made her will and we were required to presume that she knew when she executed her will that the statute made him one of the heirs of his wife, we must also presume that she knew that under our law "heirs" when used in a will would be construed in its primary sense unless a contrary intention appeared in the will. No such contrary intention did •appear in the will or in the surrounding circumstances. Nothing in the will remotely evidences that the testatrix intended Mr. Chase to be included among the heirs of Mrs. Chase. The fact that she left the will unchanged for seven years indicates that she was satisfied with it as it was then written, with its use of "heirs" in its primary sense.

I would answer: Questions one and two, that Florence W. Lawrence is the sole heir of Grace A. Chase.